Juliette **BERNIER**, Mother on behalf of
Theodore Bernier, Jr.

v.

The **STATE** of Maine and William H.
Hughes, Supt. Boys Training Center.

Supreme Judicial Court of Maine.

May 20, 1970.

McLean, Southard, Hunt & Lipman, by
Peter W. Culley, Augusta, for plaintiff.

Warren E. Winslow, Jr., Asst. Atty.
Gen., Augusta, for defendant.

Robert E. Mittel, Portland, Pine Tree
Legal Assistance, Inc., amicus curiae.

Before WILLIAMSON, C. J., and
WEBBER, DUFRESNE, WEATHER-
BEE and POMEROY, JJ.

WILLIAMSON, Chief Justice.

This post-conviction habeas corpus under
14 M.R.S.A. § 5502 et seq. is before us on
report on an agreed statement of facts.

In substance the facts are:

On September 29, 1966, Theodore Ber-
nier, Jr. (hereinafter referred to as the pe-
titioner) was adjudicated a juvenile of-
fender in Juvenile Court and was commit-
ted to the Boys Training Center. On or
about February 2, 1968, the petitioner was
released on entrustment under 15 M.R.S.A.
§ 2716 [1] to the care of his parents Mr. and
Mrs. Theodore Bernier. The terms of the
entrustment are set forth in a "Placement
Agreement" signed by the petitioner, his
parents, the Superintendent of the Boys

---

[1] " § 2716. *Duties of superintendent*

The superintendent shall have all the power which a guardian has to his ward, and all powers which parents have over their children, as to the person, property, earnings and the rehabilitation of every child committed to the center. Said child shall be under the direction of the superintendent, subject to rules and regulations of the Department of Mental Health and Corrections.

"At the discretion of the superintendent, any such child, during his or her commitment, may be kept at said center or, upon prior mutual agreement, may be entrusted without indenture, for a period not exceeding the term of his or her commitment, to the care of: Any suit-

able person or persons; the Probation and Parole Board; the Department of Health and Welfare, or other public or private child care agencies. As often as shall be required, the person or agency, to whom such child is entrusted, shall report to the superintendent the progress and behavior of said child, whether or not the child remains under such person, and if not, where he or she is.

"On being satisfied at any time that the welfare of the child will be promoted by return to the center, the superintendent may cancel such trust and resume charge of such child with the same powers as before the trust was made." (Amendments in P.L.1967, c. 506, and P.L.1969, c. 485 are not pertinent.)

Training Center and an Aftercare and Placement Worker, set forth below.[2]

On June 24, 1969, the petitioner as the result of a complaint was questioned at the Augusta Police Station regarding the theft of green stamps from a local store. No warrant, petition, or citation under 15 M.R.S.A. § 2601–2604 (relating to proceedings in juvenile court) was ever issued. After questioning, the petitioner was released.

Later the Augusta Police Department notified in Aftercare and Placement Worker assigned to the Center that the petitioner had been questioned. As a result of this notification the Boys Training Center sent an order to the Augusta Police Department requesting that the petitioner be taken into custody.

The petitioner was incarcerated in the Kennebec County Jail and on June 27, 1969 was returned from entrustment to the Boys Training Center.

The petitioner has been confined against his will continuously since June 26, 1969 either in the Kennebec County Jail or at the Boys Training Center. He repeatedly requested a hearing when confined at the Kennebec County Jail and also in particular on June 27, 1969.

No hearing or notice of hearing was ever given petitioner regarding either offenses, or any violation of the terms of his entrustment. No formal charges were ever brought against the petitioner. He has not been convicted of any offense since September 29, 1966, when adjudicated a juvenile offender.

No hearing was ever held to consider the legality of petitioner's seizure, or the admissibility of any evidence that may have been used against him, or to review any possible violations of the terms of his entrustment.

The petitioner contends that by the procedures under Section 2716 authorizing revocation of entrustment without hearing, he has been denied due process and the equal protection of the Laws under the 14th Amendment to the Federal Constitu-

2. "State of Maine
Department of Mental Health and
Corrections
BOYS TRAINING CENTER
South Portland, Maine 04106
PLACEMENT AGREEMENT
"It is my understanding that I, THEODORE BERNIER, am being released on the condition that I comply with the following rules:
"(1) That I will at all time obey and observe all city, county, state and federal laws and the instructions of my sponsor or Aftercare Worker.
"(2) That I will not change my address or leave the State of Maine without first obtaining consent of my Aftercare Worker.
"(3) That I will maintain the hours set for me by my sponsor or my Aftercare Worker.
"(4) That I will attend school regularly unless I am legally excused, or excluded by the Public School System.
"(5) If legally excused, or excluded, from school, I will seek and maintain regular employment to the best of my ability.
"(6) That I will not purchase a motor vehicle or incur any debt without first securing the written consent of the Superintendent.
"(7) That I will not operate a motor vehicle without first securing the written consent of the Superintendent.
"(8) That this placement is granted to and accepted by me with the understanding that the Boys Training Center may, at any time, in case of the violation of the terms of my placement, cause me to be returned to the Center for an indeterminate time; that while on placement, I am under the legal custody of the Superintendent of the Boys Training Center.

| s/ Theodore Bernier 2/2/68 | | s/ C. O. Parlin 2/2/68 | |
|---|---|---|---|
| (Boy) | (Date) | (Aftercare & Placement Worker) | (Date) |
| s/ Mr. + Mrs. Theodore Bernier 2/2/68 | | s/ William H. Hughes 1/30/68 | |
| (Sponsor) | | (Date) (Superintendent) | (Date)" |

tion and Article I, Section 6–A of the Maine Constitution. Further, he urges that Section 2716 in its authority to the Superintendent to cancel entrustment is impermissibly vague under the due process clause.

The applicable constitutional principles are identical under both Constitutions. For convenience we will refer only to the Federal Constitution.

We are fully satisfied that Section 2716 meets constitutional standards. The purpose and intent of the statute is plain. The State has authorized the Superintendent in his discretion to entrust a child "to the care of: Any suitable person * * *" and "on being satisfied at any time that the welfare of the child will be promoted by return to the center, * * * to cause the return of the child.

In the "Placement Agreement" we note that the petitioner understands that a condition of his release is that he will "at all time obey and observe all city, county, state and federal laws and the instructions of my sponsor or Aftercare Worker," and also "that the Boys Training Center may, at any time, in case of the violation of the terms of my placement, cause me to be returned to the Center for an indeterminate time; that while on placement, I am under the legal custody of the Superintendent of the Boys Training Center."

There is no evidence in the record that the petitioner has violated the stated conditions of the agreement. If the "Placement Agreement" is to be given the force of conditions of probation or parole, then the petitioner would be entitled to continue in the care of his parents.

■ The Legislature in Section 2716, however, has provided otherwise. The Superintendent need only be "satisfied at any time that the welfare of the child will be promoted by return to the center," to end the entrustment or placement. No agreement with a child or with his parents may

alter or change the authority of the Superintendent under the statute.

The statute, and not the "Placement Agreement," controls the respective rights and obligations of the Superintendent, the child, and the "suitable persons", as here his parents. We reach this conclusion before discussion of the constitutional issues.

The petitioner seeks to bring entrustment "to the care of" or placement within the bounds of probation or parole. The analogy is neither complete nor compelling in the result.

The petitioner is a child, lawfully committed to the Boys Training Center. The validity of the commitment to the Training Center in Juvenile Court is not questioned. We are, therefore, not concerned with In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527 (1967) and In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), holding proof beyond a reasonable doubt required when a juvenile is charged with an act which would constitute a crime if committed by an adult.

We are not here concerned with the grounds for the action of the Juvenile Court. The Superintendent by statute has all the power of a guardian to his ward, and of parents over their child. It is his discretion that governs entrustment beyond the Center.

The offender on probation and the prisoner on parole is given the opportunity of living his own life with imprisonment facing him on failure to meet the standards set not, for example, by the Warden, but by Court or Parole Board.

Revocation comes after hearing on determination of a breach by the probationer or parolee, and upon his breach alone. The probationer is committed to the custody of the State Probation and Parole Board. Revocation is by judgment of the Court after hearing. 34 M.R.S.A. §§ 1632, 1633. The "parolee is under the custody of the warden or superintendent of the in-

stitution from which he was released." 34 M.R.S.A. § 1671. Revocation is by the State Probation and Parole Board after hearing. 34 M.R.S.A. § 1675.

Hearing on revocation either of probation or parole, however, is not required under the Constitution. Mottram v. State, Me., 232 A.2d 809 (parole); State v. Oliver, Me., 247 A.2d 122 (probation).

It is to be noted that this is not an administrative transfer from the Center to the Reformatory for Men. See Shone v. State, Me., 237 A.2d 412.

 Surely if a hearing is not constitutionally required to determine violation of probation and parole, there is not such a requirement in the return of a child to the Training Center, as here.

In the case before us the State with full responsibility for the life and development of the child, has in the exercise of this responsibility, through its agent, the Superintendent, entrusted the care of the child to his parents. The Superintendent under the statute in determining whether to continue the placement, will consider it seems to us, not merely the conduct of the child, but as well the surroundings under which he is living, the character, if one will, of the sponsors, or here the parents, and the likelihood of the proper development of the child outside of the Center.

What does it matter whether the child was or was not guilty of a particular offense? His acts may or may not be the evidence which weighs in the mind of the Superintendent.

In short, the termination of probation or parole properly turns on the violation of conditions imposed by the State. Here the child may be having no difficulties whatsoever and yet may be exposed to conditions which the Superintendent considers harmful.

The analogue of the Boys Training Center is neither the Reformatory for Men nor the State Prison; but rather the home.

The State in the Center has established a substitute home, but nevertheless a home, for the child. In the operation of such a home or Center, the Superintendent must necessarily have a broad responsibility for the care and development of his wards.

We are strengthened in this view by the history of our legislation. The discretionary entrustment provision in Section 2716 was enacted in its present form in P.L. 1959, c. 342, § 1 (R.S.1954, c. 152–A, § 31) for both the Boys Training Center and the Stevens Training Center for girls. The word "entrustment" from our research first appears in P.L.1901, c. 237, § 1, relating to the State School for Girls. There were provisions for "binding out" from the establishment of the State Reform School under P.L.1853, c. 19. In 1881, c. 56, the trustees were authorized to commit a boy on probation to "any suitable inhabitant." In R.S.1954, c. 27, § 82, the department was authorized to "place on parole * * * any boy * * *" The statute reads in part:

"Such boy shall, during the term for which he was originally committed to the state school for boys, be also subject to the care and control of the department, and on its being satisfied at any time that the welfare of the boy will be promoted by his return to the school, it may order his return. * * * The department may delegate to the parole board or to the superintendent under such rules as it prescribes the powers herein granted to the department to place any boy on parole to any suitable inhabitant of the state or to the department of health and welfare, and to return to the school any boy so paroled when satisfied that the welfare of the boy will be promoted by his return."

An analogous provision may be found in Mass.Gen.Laws Anno. c. 120, § 12, "to whose care he is entrusted. The board may, at any time * * * resume the care and custody of any child released under supervision."

In the exercise by the Superintendent of the responsibility, including the placement of a child away from the Center and his return to the Center, we find no violation of due process, or equal protection of the laws in lack of a hearing. Further, in our view the authority to "cancel the trust and resume charge of such child" is given clearly and understandably.

The Superintendent may act "on being satisfied at any time that the welfare of the child will be promoted by return to the Center." The sole concern of the Superintendent is with the child. He must ask himself, what is best for the child? The test is not vague; on the contrary, it is certain and clear. The difficulty lies not in the test, but in the making of decisions, often difficult, which necessarily affect the life of the child. The petitioner is not entitled to relief.

The entry will be:

Remanded to Superior Court for entry of judgement "Petition dismissed."

MARDEN, J., sat at argument but did not participate in the decision.