**Rudolph J. HOUK, Plaintiff,**

v.

**Robert S. FURMAN, et al., Defendants.**

**Civ. No. 82–0202–B.**

United States District Court,
D. Maine.

July 18, 1985.

Anthony M. Ambriano, Robert V. Johnson II, Concord, N.H., Robert C. Treworgy, Bangor, Me., for plaintiff.

Michael D. Seitzinger, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, Me., for defendants.

## MEMORANDUM DECISION AND ORDER

CYR, Chief Judge.

This diversity malpractice action was filed on October 8, 1982, alleging negligence by the defendant-physician in treating plaintiff "on or about October 11, 1980." Defendants have moved to dismiss the complaint on the basis of plaintiff's failure to timely serve a 90-day pre-filing notice on defendants as required by 24 M.R.S.A. § 2903. Since the parties have presented materials outside of the pleadings which have not been excluded by the court, the motion to dismiss is treated as a motion for summary judgment under Rule 56. Fed.R. Civ.P. 12(b).

Plaintiff alleges that he was treated by defendant Robert S. Furman, M.D., of Furman, Wickenden and Wickenden, P.A., at the Penobscot Bay Medical Center in Rockland, Maine "on or about October 11, 1980," for a dislocated thumb. On October 8, 1982 plaintiff brought the present action. On October 13, 1982 Dr. Furman and the professional association were served with copies of the complaint. On November 3, 1982, defendants moved to dismiss the complaint. On December 6, 1982, defendants received additional copies of the complaint to which had been added plaintiff's signature subscribed and sworn before a notary public. Defendants have received no other notice of the claim which is the subject of this action.

Title 24 M.R.S.A., section 2903 (Supp. 1984), enacted in 1977, provides:

No action for death or injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced until at least 90 days after written notice of claim setting forth under oath the nature and circumstances of the injuries and damages alleged is served personally or by registered or certified mail upon the person or persons accused of wrongdoing. Any applicable statute of limitations shall be tolled for a period of 90 days from service of notice.

In *Givertz v. Maine Medical Center*, 459 A.2d 548 (Me.1983), the Maine Supreme Judicial Court [Law Court] held that section 2903 requires that the 90-day pre-filing notice be served within the two-year statute of limitations, 14 M.R.S.A. § 753, which is applicable to medical malpractice actions, and that the failure to serve such a notice within the required time subjects the malpractice suit to dismissal. *Id.* at 554.

Plaintiff responds to defendants' argument that *Givertz* mandates dismissal of the present action by asserting (1) that *Givertz* is distinguishable; (2) that *Givertz*, decided on April 26, 1983 following the commencement of suit and service of the pre-filing notice in this case, should not be applied retroactively; (3) that the notice requirement of section 2903 does not apply in this federal diversity action; (4) that the section 2903 notice provision violates the Equal Protection and Due Process clauses of the United States Constitution and the Maine Constitution; (5) that section 2903 is contrary to Me. Const. art. I, § 19; and (6) that 14 M.R.S.A. § 753 denies equal protection insofar as it provides a two-year limitations period for medical malpractice actions.

## I. GIVERTZ v. MAINE MEDICAL CENTER

*Compliance with Pre-Litigation Notice Requirement*

■ Plaintiff's argument that, unlike the present case, no notice of claim was ever served in *Givertz*, misconceives the holding in *Givertz*. In upholding the trial court's dismissal of the claim against the defendant physician in *Givertz*, the Maine court explained:

We immediately point out that in requiring service of a ninety-day mandatory notice of claim prior to the actual bringing of a malpractice suit, the Legislature at the same time integrated this specific legislation into any applicable statute of limitations respecting such actions. Having in mind that such actions must be commenced within two years after the cause of action accrues, whether it be 14

M.R.S.A. § 753 or 24 M.R.S.A. § 2902, the Legislature affirmatively kept the full two-year period intact by providing a tolling of the limitations statute for the required ninety-day run of the notice of claim. Such integration of the two statutes manifests an intent on the part of the lawmakers to make the ninety-day preaction notice of malpractice claims a mandatory requirement *within* the two-year limitations statute applicable to the commencement of malpractice suits, which statute has been construed by this Court as mandatory. *Millett v. Dumais*, 365 A.2d 1038 (Me.1976). *See also Beegan v. Schmidt*, 436 A.2d 893 (Me.1981). 459 A.2d at 551. The court then explicitly held that "the notice-of-claim-before-suit provisions of section 2903 of title 24 must be served within the two-year period of limitations of the applicable statute. Failure to do so, as in the instant case, properly subjected the malpractice suit to dismissal." *Id.* at 554.

As in *Givertz*, plaintiff filed the present malpractice action within the two-year limitations period but failed to provide the pre-litigation notice of claim within that period.[1] Thus, *Givertz* is essentially indistinguishable.

Relying on *Michaud v. Northern Maine Medical Center*, 436 A.2d 398 (Me.1981), plaintiff contends that dismissal is not mandated where the complaint is filed before the expiration of the limitations period, even though the pre-litigation notice is given after the limitations period has run. However, unlike the present case, *Michaud* did *not* involve service of a notice of claim after the running of the limitations period. The *Givertz* court explained that the claimed non-compliance with section 2903 in *Michaud* was that the notice of claim was not under oath. The notice in *Michaud was* served "well in advance of both the

filing of the complaint and the expiration of the limitations period for bringing suit." *Givertz, supra,* 459 A.2d at 551.

*Retroactivity of Givertz*

■ Plaintiff next contends that *Givertz*, which was decided April 26, 1983, represents a substantial departure from prior holdings and that it should not be applied retroactively. The "contrary" holdings referred to by plaintiff are those in *Michaud v. Northern Maine Medical Center, supra,* and *Dougherty v. Oliviero*, 427 A.2d 487 (Me.1981).

As has been demonstrated, *Givertz* in no way contradicts *Michaud*. Nor is *Givertz* at all inconsistent with *Dougherty*, which held that where an action is commenced before the expiration of the statute of limitations and a sufficient *notice of claim is served within that limitations period,* though after the commencement of the action, non-compliance with section 2903 does not necessarily require dismissal, and a stay of proceedings may be appropriate.

The issue in *Givertz:* whether the failure to serve a notice of claim within the two-year limitations period mandated dismissal, was one of first impression for the Maine court. Indeed, the *Givertz* court carefully distinguished its prior holdings in *Michaud* and *Dougherty*. Moreover, *Givertz* did not involve a question of Maine common law, but an interpretation of a 1977 statute, as manifested by the court's finding of "a clear legislative intent that some notice of claim, be it sufficient or deficient, be served, as mandated by section 2903, within the period of limitations set by the statute as extended by reason of the ninety-day tolling provision of said section." *Givertz, supra,* 459 A.2d at 553.

Although the Maine court has on occasion declined to give retrospective effect to a new rule of law, *see Myrick v. James*, 444

---

1. Under Maine law, except in foreign-object surgical malpractice cases, the two-year period of limitations in medical malpractice actions begins running at the time of the negligent act. *See Box v. Walker,* 453 A.2d 1181, 1183 (Me. 1983); *Myrick v. James,* 444 A.2d 987 (Me.1982). Here it is alleged that the negligent treatment

occurred on October 11, 1980, and there is no allegation that the alleged malpractice involved the failure to remove a foreign object from plaintiff's body after surgery. Accordingly, the December 6, 1982 "notice of claim," even if sufficient, was untimely.

A.2d 987, 1001–02 & n. 14 (Me.1982) (and cases cited), unlike *Myrick* and the cases cited therein, *Givertz* did not overrule prior decisional law, nor did it expressly preclude the retrospective application of its holding. Thus, plaintiff's claim that *Givertz* does not apply retroactively must fail.

*Applicability of Pre-Litigation Notice Requirement in Diversity Action*

█ Plaintiff contends that section 2903's pre-litigation notice requirement should not be applied in this diversity action because the requirement is "procedural" rather than "substantive." Plaintiff concedes that other state medical malpractice statutes requiring that malpractice claims be initially referred to an arbitration or review board are binding on federal courts sitting in diversity actions. *See, e.g., Feinstein v. Massachusetts General Hospital,* 643 F.2d 880 (1st Cir.1981) (applying Massachusetts law). However, plaintiff argues that the pre-litigation notice requirement of the Maine Health Security Act, which does not mandate arbitration or panel review, is purely procedural and does not apply in a federal diversity action under the Rules of Decision Act, 28 U.S.C. § 1652, and *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*Erie* overruled *Swift v. Tyson,* 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), and held that "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any [diversity] case is the law of the State." 304 U.S. at 78, 58 S.Ct. at 822. The Court later held in *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), that a state statute of limitations was applicable in a diversity action, explaining:

> [T]he question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our

problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in any action upon the same claim by the same parties in a State court? ... In essence, the intent of [the *Erie* ] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

*Id.* at 109, 65 S.Ct. at 1470.

In a case somewhat analogous to the present one, the Supreme Court, in *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), considered a Kansas statute which provided that an action was deemed commenced, for purposes of the applicable statute of limitations, at the date of service of the summons and that a 60-day grace period was available beyond the ordinary limitations period if plaintiff had made a good faith effort to effect service. The federal complaint in *Ragan* had been filed within the two-year limitations period, thus "commencing" the action under Fed.R.Civ.P. 3, but plaintiff did not serve the summons until after the limitations period had expired. The Court, viewing the Kansas service-of-summons requirement as an integral part of the statute of limitations, held that the state statute, and not the federal rule, controlled the question of whether the action was timely brought, reasoning as follows:

> Since that cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court.... It accrues and comes to an end when local law so declares.... Where local law qualifies or abridges it, the federal court must follow suit. Otherwise there is a different measure of the cause of action in one court than in

the other, and the principle of *Erie R. Co. v. Tompkins* is transgressed.

*Id.* at 533, 69 S.Ct. at 1235.

Plaintiff apparently contends that *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), precludes application of the *Givertz* rule in this diversity action. In *Hanna* the Court rejected the defendant's argument that a federal court exercising diversity jurisdiction should comply with a state statute requiring in-hand service on an executor or administrator of an estate, rather than Fed.R.Civ.P. 4(d)(1), which allows for other than in-hand service. However, *Hanna* reaffirmed that the "outcome-determination" test had to be read with reference to the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 468, 85 S.Ct. at 1142.

In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), a case "indistinguishable from *Ragan*," *id.* at 748, 100 S.Ct. at 1984, the Court explained that *Hanna* involved a " 'direct collision' between the Federal Rule and the state law," *id.* at 749, 100 S.Ct. at 1985, whereas *Ragan* did not involve a federal rule which conflicted with the essentially "substantive decision by [the state] that actual service on ... the defendant is an integral part of the policies served by the statute of limitations," *id.* at 751, 100 S.Ct. at 1985. *Walker* also pointed out that, unlike *Ragan*, the plaintiff in *Hanna* " 'was not presented with a situation where application of the state rule would wholly bar recovery; rather adherence to the state rule would have resulted only in altering the way in which process was served.' " 446 U.S. at 747, 100 S.Ct. at 1983, *quoting Hanna v. Plumer*, 380 U.S. at 469, 85 S.Ct. at 1143.

The section 2903 requirement that a notice of claim be served upon a malpractice defendant within the applicable Maine period of limitations, as a prerequisite to the right to recover in a court action, renders the notice-of-claim requirement, like the service-of-summons requirements in *Ragan*

and *Walker*, an integral part of the Maine statute of limitations for malpractice actions. No federal rule directly conflicts with the Maine notice-of-claim requirement. Moreover, to refuse to apply section 2903 in this diversity case would produce an inequitable administration of Maine law as between resident and nonresident plaintiffs in malpractice actions, thus contravening the principles of *Erie, supra,* 304 U.S. at 74–75, 58 S.Ct. at 820–21.

In short, the pre-litigation notice requirement, as an integral part of the statute of limitations, is "intimately bound up" with the rights and obligations of the parties to Maine medical malpractice claims, and, therefore, must be applied in this diversity action. *See Feinstein v. Massachusetts General Hospital,* 643 F.2d 880 (1st Cir. 1980) [*Erie* mandates application of Massachusetts statute requiring that court refer medical malpractice claim to tribunal]; *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 149 n. 4 (5th Cir.1981) [Louisiana statute requiring pre-litigation referral of malpractice claim to review panel]; *DiAntonio v. Northampton-Accomack Memorial Hospital,* 628 F.2d 287, 290 (4th Cir.1980) [Virginia statute requiring pre-litigation notice and panel review of claim (at request of party)]; *Edelson v. Soricelli,* 610 F.2d 131, 133–35 (3d Cir.1979) [Pennsylvania statute requiring arbitration of malpractice claims as precondition to court action]; *Davison v. Sinai Hospital of Baltimore,* 617 F.2d 361 (4th Cir.1980), *aff'g,* 462 F.Supp. 778 (D.Md.1978) [Maryland statute requiring arbitration of malpractice claims as precondition to court action]; *Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1168–1170 (5th Cir.1979) [Florida statute requiring mediation of malpractice claim prior to court action].

## II. CONSTITUTIONAL CHALLENGES

Plaintiff argues that the pre-litigation notice requirement of section 2903 violates the Equal Protection and Due Process Clauses of the United States Constitution, U.S. Const. amend. XIV, and the Maine Constitution, Me. Const. art. I, § 6–A, as

well as article I, section 19 [2] of the Maine Constitution. Plaintiff also contends that the two-year statute of limitations for medical malpractice actions, 14 M.R.S.A. § 753, violates the constitutional requirement of equal protection.

### Pre-Litigation Notice

#### A. Equal Protection

Plaintiff argues that the notice-of-claim requirement denies equal protection of the laws because it impermissibly distinguishes between medical malpractice plaintiffs and plaintiffs in other tort actions. Plaintiff concedes that the requirement that a notice of claim be served prior to commencing a malpractice action, and within two years of the accrual of the cause of action, does not implicate a fundamental right or a suspect classification and therefore does not invoke the "strict scrutiny" standard of review. However, plaintiff maintains that this court must apply an "intermediate" level of scrutiny, rather than the "rational relationship" test applied in most equal protection challenges.

■ Generally, social or economic legislation which does not impinge on fundamental rights or employ suspect classifications does not deny equal protection if the discriminatory classification occasioned by the statute is rationally related to a legitimate governmental objective. *City of Cleburne v. Cleburne Living Center,* — U.S. —, —, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985): "When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude . . . and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes."

In certain narrowly defined circumstances, the Supreme Court has applied an intermediate level of scrutiny—requiring the state to demonstrate a "substantial interest" in its discriminatory classification. *See Pickett v. Brown,* 462 U.S. 1, 8, 103 S.Ct. 2199, 2204, 76 L.Ed.2d 372 (1983)

[classifications based on illegitimacy of child]; *Plyer v. Doe,* 457 U.S. 202, 216–24, 102 S.Ct. 2382, 2394–98, 72 L.Ed.2d 786 (1982) [statute withholding state funds for the education of illegal-alien children]. The plaintiff points to no special circumstances, such as the discrete nature of the class, the consequent lifetime hardship imposed upon the class, or the nonaccountability of the class for their disadvantageous status, *see Plyer v. Doe,* 457 U.S. at 223–24, 102 S.Ct. at 2398, which would warrant a departure from the general rule requiring application of the rational relationship test.

The vast majority of federal and state courts which have considered equal protection challenges to statutory schemes aimed at reducing the costs of malpractice litigation by providing for pre-litigation notice and review of claims has applied the rational relationship test. *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 150 (5th Cir.1981) (La.); *DiAntonio v. Northampton-Accomack Memorial Hospital,* 628 F.2d 287, 291 (4th Cir.1980) (Va.); *Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1172–73 (5th Cir.1979) (Fla.); *DiFilippo v. Beck,* 520 F.Supp. 1009, 1016 (D.Del. 1981); *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744, 750 (1977); *Lacy v. Green,* 428 A.2d 1171, 1177 (Del.Super.1981); *Everett v. Goldman,* 359 So.2d 1256, 1266 (La.1978); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, 78–79 (1978); *Paro v. Longwood Hospital,* 373 Mass. 645, 369 N.E.2d 985, 988–89 (1977); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 441–42 (1978); *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657, 668 (1977); *State ex rel Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221, 225–28 (1978); *see Sibley v. Board of Supervisors of Louisiana State University,* 462 So.2d 149, 155–56 (La.1985) [involving statute limiting recovery in medical malpractice actions].

Plaintiff cites, as contrary authority, *Carson v. Maurer,* 120 N.H. 925, 424 A.2d

---

**2.** Every person, for an injury done him in his person, reputation, property or immunities, shall have remedy by due course of law; and

right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay.

825 (1980), which, in evaluating a similar New Hampshire pre-litigation notice provision, concluded that the proper test to be applied was whether the classification bears "a fair and substantial relation to the object of the legislation." *Id.* 424 A.2d at 831. However, the *Carson* court explicitly stated that it did not consider itself confined to the federal constitutional standards of equal protection review, and relied on state case law applying the indicated level of review to social and economic legislation. *Id.* at 831. Whereas the Maine Supreme Judicial Court holds that the requirements of the equal protection and due process clauses of the Maine Constitution are no more stringent than those imposed by the Fourteenth Amendment. *Beaulieu v. City of Lewiston,* 440 A.2d 334, 338 n. 1 (Me.1982); *State v. Richardson,* 285 A.2d 842, 844 (Me.1972); *see Bernier v. State,* 265 A.2d 604, 606 (Me.1970).

Additionally, it is not at all clear that the *Carson* test differs significantly from the rational relationship test. The *Carson* language appears to have been taken from

*Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225 (1971), which explained that "[a] classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Id.* at 76, 92 S.Ct. at 254, *quoting Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). In the very next sentence of the *Reed* opinion the Court restated the test to be whether the discrimination "bears a rational relationship to the state objective...." *Id.*[3]

■ But assuming that the level of scrutiny applied in *Carson* is somewhat more stringent than the rational relationship test ordinarily applied in cases involving economic and social legislation, the court declines to follow *Carson,* in view of the overwhelming authority to the contrary and Maine's explicit refusal to extend equal protection and due process rights beyond the federal constitutional norm.[4]

**3.** Although *Reed,* involving a differentiation on the basis of gender, *see also Mississippi University for Women v. Hogan,* 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), adheres to the general rubric of the rational relationship test, one commentator discerned, in *Reed,* a shift toward a so-called "means-oriented scrutiny test." Gunther, *The Supreme Court, 1971 Term-Forward: In Search of Evolving Doctrine on a Changing Court: A Model for Newer Equal Protection,* 86 Harv.L. Rev. 1, 20–24 (1972). In Professor Gunther's view the requirement of a "substantial relationship" between the legislation and its purported object requires the state to provide greater justification for its classification than is required, in practice at least, under the rational relationship test, the difference being that under the former, unlike the latter, the reviewing court will not hypothesize purposes for the classification that were not previously asserted. *Id.* at 20–21.

The "substantial relation" language of *Reed* has also been viewed as requiring a "close fit" between the legislative means and ends, thus involving a greater degree of scrutiny of the factual assumptions underlying the legislation. *See* L. Tribe, *American Constitutional Law* § 16.30, at 1082–83 (1978).

Assuming the applicability of a more stringent, intermediate level of scrutiny in some cases, commentators have noted that its applica-

tion appears to have been limited by the Supreme Court to cases involving "a quasi-fundamental right or an 'almost' suspect classification." *E.g.* Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications,* 55 Tex.L.Rev. 759, 773 (1977). Moreover, even the approach advocated by Mr. Justice Marshall, that of evaluating the interest infringed and applying an appropriate sliding scale level of scrutiny, *see, e.g., City of Cleburne v. Cleburne Living Center,* —— U.S. ——, ——, 105 S.Ct. 3249, 3263, 87 L.Ed.2d 313 (1985) (Marshal, J. dissenting), is unavailing to plaintiff here inasmuch as the interest infringed by the pre-litigation notice requirement, the possible ninety-day delay in recovery, is rather insignificant, *see* Note, *California's Medical Injury Compensation Reform Act: An Equal Protection Challenge,* 52 So.Cal.L.Rev. 829, 962–66 (1979), thus requiring only a minimal degree of scrutiny.

**4.** Examining the other cases cited by the plaintiff, in *Johnson v. St. Vincent Hospital, Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980), the court stated that in order to withstand an equal protection challenge a statute requiring pre-litigation panel review of malpractice claims must meet the standard stated in *Reed v. Reed, supra.* However, the court then restated the test to be whether there was any "conceivable basis which might have supported the classification," *id.* 404 N.E.2d at 597, and upheld the statute.

In determining whether the challenged statutory discrimination is constitutional, the following questions must be addressed under the rational relationship test: "(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981). In approaching these issues the court must refrain from acting as a "superlegislature to judge the wisdom or desirability of legislative policy determinations made in ... the local economic sphere." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). The plaintiff bears the "heavy" burden of showing that " 'the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational.' " *Hodel v. Indiana,* 452 U.S. 314, 332, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981), *quoting Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).

Considering the first step of the analysis, whether the pre-litigation notice provision is directed at a legitimate purpose, the Maine Law Court has explained that the Maine Health Security Act of 1977, 24 M.R.S.A. § 2501, *et seq.,* was enacted "to promote the settlement of disputes and ameliorate the current proliferation of litigation [in medical malpractice].... For one thing, liability insurance coverage of exposure ... in the area of malpractice

actions was becoming increasingly difficult to obtain, and, if obtainable, was unduly costly." *Givertz v. Maine Medical Center, supra,* 459 A.2d at 553.

The Pomeroy Commission on Medical and Hospital Malpractice Insurance [Commission] reported a "substantial problem" in Maine involving increasing insurance rates for medical practitioners, with a probable effect on the availability of health care. As summarized in the "Statement of Fact" accompanying the bill, L.D. 727, 108th Me. Legis., 1st Reg.Sess. 21 (1977), which produced the Maine Health Security Act:

> The commission to revise the laws relating to medical and hospital malpractice insurance has found that there is a substantial problem in the State concerning the availability and cost of malpractice insurance for physicians and hospitals. The commission has found further that the situation has affected the availability of health care in some areas and the cost of health care in all areas of the State. Further deterioration is inevitable unless action is taken now.

Plaintiff challenges the legislative findings by pointing to portions of the Commission report indicating that the Commission considered Maine doctors and hospitals to be in a comparatively "favorable" position when viewed in light of the medical practice problem at the national level. However, while recognizing that the situation in Maine is not "cataclysmic," the Commission found that there was a "substantial problem" affecting Maine health care.

Plaintiff relies on *Boucher v. Sayeed,* 459 A.2d 87 (R.I.1983), in which the Rhode Island Supreme Court held that a Rhode Island statute, requiring malpractice plain-

---

*Arneson v. Olsen,* 270 N.W.2d 125 (N.D.1978), and *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), both considered state statutes which limited the amount recoverable in malpractice actions. *Arneson* required a "close correspondence between statutory classification and legislative goals," 270 N.W.2d at 133. *Jones* required that the legislation "substantially further some specifically identifiable legislative end," 555 P.2d at 407, but did not decide the equal protection question, choosing to remand the case to the trial court for further

factual findings. *Contra Sibley v. Board of Supervisors of University of Louisiana,* 462 So.2d 149, 156 (La.1985) [applying rational relationship test]. Moreover, the legislative encroachment on individual rights at issue in *Arneson* and *Jones,* limiting the amount of recovery in malpractice actions notwithstanding the actual damages suffered, is clearly more onerous than is the minor delay (90 days) imposed by Maine's pre-litigation notice requirement, the former directly impinging, without recourse, the individual's interest in damages recovery.

tiffs to present, at a preliminary hearing before the judge, "evidence sufficient to raise a legitimate question of liability," *id.* at 90, violated Rhode Island malpractice plaintiffs' federal constitutional right to equal protection of the laws. Applying the rational relationship test, the court upheld the trial court's finding that there was no malpractice "crisis" at the time of the legislative enactment, and concluded: "Absent a crisis to justify the enactment of such legislation, we can ascertain no satisfactory reason for the separate and unequal treatment that it imposes on medical malpractice litigants." *Id.* at 93.

However, *Boucher*'s premise, that only a "crisis" can give rise to a legitimate state interest in attempting legislative solutions to malpractice insurance coverage problems, is open to question. Moreover, unlike *Boucher*, plaintiff here has not presented facts to indicate that the problem perceived by the Maine legislature in 1977 was illusory. Indeed, Maine was certainly not alone among the states in perceiving a need for legislative action to avert the problems of health care cost and availability resulting from rising malpractice insurance rates. *See generally* Note, *Medical Malpractice Statute of Repose: An Unconstitutional Denial of Access to the Courts,* 63 Neb.L.Rev. 150, 160–62 (1983).

Next, it is necessary to consider whether it was reasonable for the Maine Legislature to believe that the differentiation between medical malpractice plaintiffs and other personal injury plaintiffs, i.e., the requirement that the former group alone provide a pre-litigation notice, would promote the stated purpose of maintaining the availability of quality health care at an affordable cost throughout the state.

In its report to the legislature the Commission stated:

> Notice of claim. The Commission believes that any reasonable measure that helps weed out doubtful claims and encourages the settlement of meritorious ones is beneficial to the parties and public. In malpractice claims this may be the result if there is a mandatory waiting period prior to suit in which negotiations may take place.

Commission Report xxiii. The bill submitted to and enacted by the legislature included a mandatory 90-day pre-litigation notice "[i]n order to encourage settlement of disputes," L.D. 727 (Statement of Facts) 108th Me.Legis., 1st Reg.Sess. 21 (1977).

The Maine Law Court stated in *Dougherty v. Oliviero,* 427 A.2d 487 (Me.1981), that "[t]he purpose of the notice-of-claim requirement is to provide a mandatory 90-day waiting period during which medical malpractice claims can be settled without litigation through the use of the dispute resolution procedures[5] established by the

---

5. The Act established a voluntary procedure for the review of malpractice claims by an "advisory panel," 24 M.R.S.A. §§ 2801–2809, and a procedure for the voluntary submission of malpractice claims to binding arbitration, 24 M.R.S.A. §§ 2701–2715 (repealed effective Jan. 1, 1983).

The panel review procedure provides for the submission of cases as follows:

§ 2803. Submission of cases

1. Written requests; signatures; content. Any attorney may submit a case of asserted medical malpractice for the consideration of the panel by *a request in writing signed by both the party and his attorney* and delivering the original and 6 copies thereof to the chairman of the panel. This *written request shall contain the following:*

A. A brief statement of the facts of the case, showing the persons involved, the dates and the circumstances, so far as they are known, of the alleged act or acts of malpractice;

B. *A statement authorizing the panel, by its chairman, to obtain all medical and hospital records* and information pertaining to the incident complained of, which statement shall be accompanied by true copies of any and all medical and hospital records then in the possession of said party or his attorney, and which, for only the purpose of the panel's consideration of the matter, waives privilege as to the contents of such records. The statement shall not be construed as waiving the privilege for any other purpose or any other contest, in or out of court;

C. A statement that the deliberations and the discussions of the panel and of any member of the panel in the deliberation of the case shall be confidential and privileged, and that no panel member will be asked in any action to testify concerning the deliberations, discussions and internal proceedings of the panel;

D. A statement that the party or attorney understands and subscribes to the purpose of

Maine Health Security Act ...," *id.* at 489, that is, "a period of time during which the parties can attempt to settle the claim through nonjudicial procedures before they encounter the expense, time limits, and other pressures associated with discovery and preparation for trial," *id.* at 490. *See also Michaud v. Northern Maine Medical Center*, 436 A.2d 398, 401 (Me.1981).

In *Givertz v. Maine Medical Center*, 459 A.2d 548 (Me.1983), the Maine court once again articulated the purpose of the pre-litigation notice provision:

> The Legislature, in 24 M.R.S.A. § 2903, intended to implement the recommendation of the Pomeroy Commission which viewed the mandatory ninety-day notice of medical malpractice claims prior to the commencement of any action for damages on account thereof as a reprieve period before the parties locked horns in a very sensitive judicial proceeding, the Commission believing that such waiting period prior to suit would be beneficial to the parties and the public by helping weed out doubtful claims and encouraging the settlement of meritorious ones.

*Id.* at 550. *See also Taylor v. Hill*, 464 A.2d 938, 945 (Me.1983).

Plaintiff contends that the pre-litigation notice requirement does not in fact help weed out doubtful claims or encourage the settlement of meritorious ones and thus cannot be said to be reasonably related to its purported objective. Plaintiff points to (1) other disincentives discouraging the litigation of unfounded claims, including exposure to liability for malicious prosecution and contingent fee arrangements; (2) the option of the malpractice *claimant* to set-

tle his or her claim prior to suit; (3) the availability of pretrial procedures for settling claims or disposing of meritless claims; and (4) "substantial evidence suggesting" that, as a tactical device, insurers wait until immediately prior to trial to settle claims.

In evaluating these contentions the court is mindful that the requirement of equal protection is satisfied if the Maine Legislature "could rationally have decided" that the notice provision either itself or in combination with other provisions "might" help to accomplish a legitimate objective, *Minnesota v. Cloverleaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981).

The presence of other disincentives to pursuing unfounded claims does not negate the potential benefits of the *additional* disincentive that may obtain from affording an opportunity for a pre-litigation response to the malpractice claim, i.e. the potential for (1) exposing and resolving unfounded claims prior to the commencement of costly litigation and (2) arriving at pre-litigation settlements of nonfrivolous claims not yet inflated by litigation costs. Similarly, the availability of court procedures for disposing of or settling claims does not avoid the "expense, time limits, and other pressures associated with [litigation]," *Dougherty, supra*, 427 A.2d at 489; nor does it negate the usefulness of the notice provision in providing *further* inducement and occasion for the early resolution of claims.

Although, as plaintiff suggests, a malpractice claimant has always been able to pursue settlement prior to commencing suit, the prelitigation notice requirement

screening medical malpractice cases and has advised his client thereof and that the client agrees to the submission of the facts pursuant to the plan;

E. A request that the panel consider the merits of the claim and render its report.
2. Notice to physician; agreement; waiver. *Upon receipt of the request, the chairman shall immediately forward a copy to the physician involved* who, if he agrees to the submission, shall forthwith forward to the chairman a statement as provided in subsection 1, para-

graphs B, C, D and E. Neither the party making the original request pursuant to subsection 1 nor his attorney shall be bound by any waiver or agreement made thereunder until the chairman shall have received from the physician a like written waiver or agreement.

24 M.R.S.A. § 2803 (*emphasis added*). As presently worded, the statute appears to contemplate the submission of requests for review by *claimants* alone, rather than by either claimants or physicians.

insures that malpractice *defendants* have such an opportunity as well, thus contributing to the prospect for nonjudicial resolution of claims.

Finally, plaintiff's assertions (1) that "insurers" consciously employ the litigation tactic of refusing settlement until immediately prior to or during trial, and (2) that the notice requirement will increase the cost of malpractice litigation, are not supported by any evidence in the record nor do they negate the benefit which will accrue if a substantial number of physicians and insurers are able to settle or otherwise resolve claims without incurring the expense of litigation.

Plaintiff correctly points out that, in *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825, 834–35 (1980), the New Hampshire Supreme Court found that a similar pre-litigation notice provision did not "fairly and substantially relate to any legitimate legislative object," i.e., it bore "no reasonable relationship to the stated purpose of [the statute]," *id.* 424 A.2d at 834. The court reasoned that "[t]he malpractice defendant gets all the notice he needs when he is served with process ..., because he still has ample time to review the claim and initiate settlement negotiations before the trial begins. Any expenses incurred in doing so would likewise be incurred if the investigatory and settlement process was commenced prior to suit." *Id.* However, the fact that there is "ample" time for settlement after litigation has commenced does not mean that there is no conceivable benefit to be gained from providing "a period of time during which the parties can attempt to settle the claim through nonjudicial procedures before they encounter the expense, time limits, and other pressures associated with discovery and preparation for trial," *Dougherty v. Oliviero*, 427 A.2d at 490. Moreover, the notice also provides an opportunity for a pre-litigation response to claims and a voluntary panel review of claims, both having the potential of discouraging the filing of groundless suits. Finally, *Carson* does not explain the factual basis for its conclusion that pre-litigation settlement expenses do not differ from those incurred during litigation; nor does plaintiff here offer any evidentiary support for this proposition.

To be sure, those states which have responded to the medical malpractice problem by *mandating* arbitration or panel review of claims may have taken a more effective approach toward weeding out frivolous claims and encouraging the settlement of meritorious ones. Accordingly, courts confronted with such statutes have had little trouble concluding that such mandatory review can reasonably be expected to promote the goal of reducing malpractice insurance costs. *See Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d 146, 150 (5th Cir.1981); *DiAntonio v. Northampton-Accomack Memorial Hospital*, 628 F.2d 287, 291 (4th Cir.1980); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1170–75 (5th Cir.1979) (and cases cited at 1170 n. 11). However, it does not follow that Maine's pre-litigation notice provision is "wholly irrelevant to the achievement of the State's objective," *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961), merely because the state provides only for *voluntary* panel review. Indeed, the Maine Legislature, and the Commission upon whose recommendation the legislature relied, saw some value in simply providing a "waiting period prior to suit in which negotiations may take place," Commission Report, xxiii, for the purpose of encouraging settlement of disputes; and it has not been demonstrated that the legislature's assessment was unreasonable.

### B. *Due Process*

■ Plaintiff does not explain, through argument or reference to authority, how section 2903 violates "due process." Assuming that it is plaintiff's contention that the statutory imposition of a pre-litigation notice requirement denies substantive due process, it is well-established that legislative acts adjusting economic burdens and benefits carry a presumption of constitutionality and that the person challenging the enactment must establish that the leg-

islature has acted in an "arbitrary and irrational" manner. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

The court has already concluded, in the context of plaintiff's equal protection challenge to section 2903, that legislative enactment of the pre-litigation notice requirement and waiting period is rationally related to the legitimate objective of assuring the continued availability of affordable health care in the face of increasing insurance costs attributable, in part, to litigation costs.

In view of the minimal burden imposed by service of the pre-litigation notice and the ensuing 90-day delay in filing suit, the legislature cannot be said to have acted arbitrarily or irrationally in concluding that the pre-litigation notice requirement was a reasonable approach to reducing litigation costs. *See Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d 146, 151 (5th Cir.1981); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1175–77 (5th Cir.1979). Of course, it is true that plaintiff's noncompliance with the notice requirement bars recovery. But it is not the sometimes harsh effects of noncompliance with the notice requirement, but the burden of compliance, that is to be considered in weighing the burdens imposed by the statute.

## C. *Me. Const. art. I, § 19*

■ Finally, plaintiff argues that section 2903 violates article I, section 19 of the Maine Constitution, which provides: "Every person for an injury done him in his person, reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Plaintiff essentially contends that the 90-day delay inherent in the pre-litiga-

tion notice requirement does not allow for the administration of justice "promptly and without delay," relying on *State ex rel Cardinal Glennon Hospital v. Gaertner*, 583 S.W.2d 107 (Mo.1979), involving a similar Missouri constitutional provision. However, the Missouri statute in *Gaertner*, unlike the Maine Health Security Act, mandated a review of the claim by a review panel and a consequent delay of up to six months prior to suit. Moreover, other state courts have rejected, as meritless, the contention that mandatory pre-litigation panel review, involving substantial delay, violates similar state constitutional provisions. *Linder v. Smith*, 629 P.2d 1187, 1190–91 (Mont.1981); *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585, 594–96 (1980); *Everett v. Goldman*, 359 So.2d 1256, 1268–69 (La.1978); *Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, 71 (1978); *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657, 663–65 (1977).

### Limitations Period for Malpractice Claims

■ In addition to his equal protection challenge to 24 M.R.S.A. § 2903, plaintiff belatedly[6] brings a similar challenge to the two-year limitations period applicable to medical malpractice actions under 14 M.R.S.A. § 753, contending that it impermissibly distinguishes between victims of medical malpractice and victims of other types of negligence.

In 1931 the Maine Legislature included actions for "malpractice of physicians and all others engaged in the healing art" with certain other tort actions governed by the two-year limitations period, *see* 14 M.R.S.A. § 753, rather than the residual six-year limitations period, *see* 14 M.R.S.A. § 752. P.L.1931 Ch. 62.

Once again the court looks "only to whether there is a rational relationship be-

---

**6.** In response to defendants' suggestion at oral argument on June 24, 1983 that *Givertz* mandated dismissal of the complaint, both parties, pursuant to court order, filed supplemental memoranda dated July 15, 1983 and reply memoranda dated July 29, 1983. No mention was made of plaintiff's constitutional challenge to 14 M.R.S.A. § 753 until the issue was raised in his *reply* brief.

tween the classification and some legitimate governmental purpose in determining whether the statute violates the equal protection clause," *Brubaker v. Cavanaugh,* 741 F.2d 318, 321 (10th Cir.1984). *See Cournoyer v. Massachusetts Bay Transportation Authority,* 744 F.2d 208, 212–13 (1st Cir.1984); *Cadieux v. International & Telegraph Corp.,* 593 F.2d 142, 145 (1st Cir.1979).

Statutes of limitations serve the policy of discouraging stale and fraudulent claims where the loss of evidence makes the proof more difficult or costly. *See Clark v. Gulesian,* 429 F.2d 405, 406 (1st Cir.1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971); *Fitz v. Dolyak,* 712 F.2d 330, 333 (8th Cir.1983).[7] The legislative decision that physicians and other health care providers should be accorded the benefit of a limitations period shorter than the six-year residual limitations period applicable to most negligence actions under Maine law may have been arrived at on the basis of the legislature's perception of (1) the significantly greater liability exposure to which such health care professionals are subjected in their performance of an essential human service or (2) a greater need, in the interests of accurate factfinding, for prompt medical investigation of the source of ailments or injuries attributed to a physician's negligent treatment.

There being a rational basis upon which to distinguish between medical malpractice cases and other negligence cases, 14 M.R.S.A. § 753 does not deny equal protection. *See Brubaker v. Cavanough,* 741 F.2d 318, 321 (10th Cir.1984) [Kansas four-year limitations period for actions against health care providers (compared with ten-year period for claims against other tortfeasors) rationally related to legislative attempt to reduce cost and unavailability of malpractice insurance largely attributable to length of period of exposure to liability]; *Hargett v. Limberg,* 598 F.Supp. 152, 156–58 (D.Utah 1984) [rejecting, under rationale similar to *Brubaker,* equal protection challenge to a statute distinguishing minors who have malpractice claims from minors who have other types of claims, by excluding the former from the normal tolling provision applicable to minors]; *cf. Cournoyer v. Massachusetts Bay Transportation Authority,* 744 F.2d 208, 212 (1st Cir. 1984) [Massachusetts statute of repose, barring actions for injury due to real estate improvement six years after the act of performing the improvement, rationally related to legitimate state objective]; *Cadieux v. International Telephone & Telegraph Corp.,* 593 F.2d 142, 145 (1st Cir.1979) [R.I. two-year limitations period for wrongful death actions (as compared to longer limitations period for personal injury actions)]; *but cf. Heath v. Sears, Roebuck & Co.,* 123 N.H. 512, 464 A.2d 288 (1983) [holding that N.H. three-year limitations period for products liability actions (as compared to six-year limitations period for other personal injury actions) denies

**7.** In *Clark v. Gulesian, supra,* the First Circuit held that the application of Maine's medical malpractice statute of limitations to bar a "foreign-object" malpractice action not commenced within two years of the date of the surgery in question, as required under the then-existing rule defining the point when a cause of action "accrues," *Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962), *overruled Myrick v. James,* 444 A.2d 987 (Me.1982), did not deprive plaintiff of equal protection or due process. The court noted that

the state may reasonably recognize that a defendant has an interest in repose, and in the avoidance of stale claims, however free from fault the claimant's delay may be. Such a conclusion does not deprive the plaintiff of any constitutional right to fair or equal treatment.

*Id.* at 406.

*Fitz v. Dolyak, supra,* rejected an equal protection challenge to an Iowa statute which limits, to six years from the date of the negligent act, the period for bringing medical malpractice claims involving diagnosis and treatment while applying no such limitation to "foreign-object" malpractice cases, the latter being maintainable within two years of the time the injury should have been discovered without regard to the six-year statute of repose. The court found that the provision of a potentially longer period for bringing "foreign-object" cases is rational because such claims are more easily verified even with the passage of time, while other malpractice claims are more apt to become stale.

equal protection, because providing special protection to manufacturers is not a legitimate legislative objective].

### III. CONCLUSION

Failure to serve the pre-litigation notice of claim required by 24 M.R.S.A. § 2903 within the two-year limitations period of 14 M.R.S.A. § 753 mandates dismissal of plaintiff's action. *Givertz v. Maine Medical Center*, 459 A.2d 548, 554 (Me.1983).

The section 2903 notice requirement is applicable in this diversity action and *Givertz* controls even though the two-year limitations period expired prior to the date of that decision. Section 2903 does not deny equal protection or due process, nor does it violate Me. Const. art. I, § 19; and the two-year limitations period for medical malpractice actions does not violate the equal protection clauses of the federal and state constitutions.

Accordingly, defendants' motion to dismiss, treated as a motion for summary judgment, is hereby GRANTED, and the Clerk is directed to enter judgment for the defendants dismissing all claims.

SO ORDERED.