Charles W. HIBBS, et al.

v.

John YASHAR, et al.

Lisette A. BOHENSKY, p. p. a.
Andrea Bohensky

v.

Robin G. WALLACE, et al.

Civ. A. Nos. 79–0260, 80–0399.

United States District Court,
D. Rhode Island.

Aug. 20, 1981.

Max Wistow, John P. Barylick, Providence, R. I., for plaintiffs in case no. 79–0260.

Joseph A. Kelly, Kirk Hanson, Hugh Moore, Thomas D. Gidley, Providence, R. I., for defendants in case no. 79–0260.

Leonard Decof, Providence, R. I., for plaintiffs in case no. 80–0399.

Thomas D. Gidley, Joseph A. Kelly, Providence, R. I., for defendants in case no. 80–0399.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

In *Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R.I.1978), defendants moved to refer a diversity medical malpractice action to a State medical malpractice mediation panel pursuant to then-existing provisions of R.I. G.L. §§ 10–19–1, et seq. (1977). This court declined to refer the action because the State tribunal constituted a part of the State judicial system and operated as an "adjunct of the state court rather than as an independent agency." 78 F.R.D. at 221. To allow referral to this kind of State panel would have been "contrary to the congressional grant of diversity jurisdiction," *id.*, and was "tantamount to vesting original jurisdiction in state court." *Id.* at 222. This Court also concluded that it need not, under the command of the Rules of Decision Act, 28 U.S.C. § 1652, and the Doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), appoint a federal mediation panel to which reference of all medical malpractice cases filed in Federal Court should be made. *Id.* at 223–29.

Subsequent to the decision in *Wheeler*, the First Circuit ruled on similar questions raised regarding a Massachusetts medical malpractice tribunal. In *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (1st Cir. 1981), the Court held that reference to the tribunal created by Massachusetts law would not result in an "ouster of federal jurisdiction," *id.* at 888, and that

application of the *Erie* doctrine mandated reference to the Massachusetts panel. *Id.* at 883–87. The Court, however, specifically left open the question whether a Federal Court must transfer diversity medical malpractice actions to the Rhode Island medical malpractice tribunal as constituted under R.I.G.L. §§ 10–19–1, et seq. (1977). Hence, the First Circuit left this Court's holding in *Wheeler* intact although it noted in *dicta* that it "consider[ed] some of the reasoning in *Wheeler* inconsistent with the views we express herein." 643 F.2d at 887 n. 10.

After the First Circuit issued its decision in *Feinstein*, defendants in various pending diversity medical malpractice actions filed motions requesting reconsideration of this Court's decision in *Wheeler*. These motions, however, were mooted when, in May, 1981, the Rhode Island legislature amended Chapter 19 of Title 10 of the Rhode Island General Laws by repealing the existing provisions in their entirety, and substituting a significantly different mechanism for the processing of medical malpractice claims. Defendants have now moved for referral of their pending diversity actions to the "new" State screening mechanism codified in R.I. G.L. § 10–19–1, et seq. (1981). I will consider their motions in light of the still intact holding in *Wheeler* as well as the most recent teachings from the First Circuit in *Feinstein*.

## THE NEW RHODE ISLAND PROCEDURE

The new screening mechanism created by the State substitutes a Judge of the State Superior Court for the three-person "panel" that was appointed by the Superior Court under the prior enactment. *See Wheeler v. Shoemaker*, 78 F.R.D. at 219–20. Within ninety days of the filing of an answer in a medical malpractice action, the assigned Superior Court Judge is to hold a preliminary hearing. During this hearing, the Judge is given liberal discretion to subpoena records or individuals to supplement the evidence presented by the parties. The Judge may also appoint impartial experts to examine the claimant and relevant evidentiary matter for the Court. Admissible evidence at the hearing includes, but is not limited to "hospital and medical records, nurses' notes, x-rays, and other records kept in the usual course of the practice of the health care provider without the necessity for other identification or authentication . . . ." R.I. G.L. § 10–19–3. The Judge may also refer to "statement[s] of fact or opinion on a subject contained in a published treatise, periodical, book or pamphlet or statement by experts without the necessity of such experts appearing at said hearing." *Id.* After the hearing has been completed, the Superior Court Judge "shall make a finding of fact as to whether the evidence if properly substantiated and viewed in the light most favorable to the plaintiff would be sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." R.I.G.L. § 10–19–4. Presumably, if the Judge makes a finding that the claim raises a legitimate question of liability, the case will be assigned for trial de novo. However, if the finding "is one of an unfortunate medical result, the action shall be dismissed with prejudice." *Id.*

The Rhode Island law at issue arguably requires one of two actions by a Federal Court seeking to apply its terms. First, application of the State law in a federal diversity action could require a Federal Court to "assign" the case to a State Superior Court Judge who would make the required determination. Alternatively, the State enactment could be viewed as requiring that a Federal Judge make the determination required by application of the statute. I will address each of these possibilities.

### 1. Assignment to State Superior Court

█ If the state law requires actual referral of a federal diversity action for a preliminary determination by a State Superior Court Judge, I must conclude that application of the law would violate the Supremacy Clause of the United States Constitution because such referral would be inconsistent with the Congressional policies

served by the diversity statute, 28 U.S.C. § 1332, which provides:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different States.

Rhode Island's "new" screening mechanism for medical malpractice cases comprises an even more egregious "ouster" of federal jurisdiction than did the procedure considered in *Wheeler.* The State procedure no longer even resembles an *administrative* determination. *See Edelson v. Soricelli,* 610 F.2d ‑131, 145 (3rd Cir. 1979) (Rosenn, J. dissenting) ("thinly disguised" judicial forum). Rather, application of the statutory provisions would entail a potentially determinative transfer of jurisdiction from the federal judiciary to the state judiciary. The State's new screening tribunal consists of a Judge of the State Superior Court. This Judge is empowered to conduct a full-fledged hearing after which he or she must make a determination whether the claimant has raised a "legitimate question of liability suitable for judicial inquiry or whether the plaintiff's case is merely an unfortunate result." Although it does not specify the effect of the former resolution, the statute commands that the action be dismissed with prejudice if the latter finding is made. Unlike the Massachusetts statute considered in

*Feinstein,* the Rhode Island scheme does not permit a disappointed claimant to file a bond and undertake a trial de novo: an out of state claimant who cannot convince a State Superior Court Judge of the merits of his action against a local doctor or medical institution thus loses all recourse to the Federal trial court for resolution of his claim. *Compare,* Mass.Gen.Laws ch. 231, § 60B *with* R.I.G.L. § 10–19–4 (1981). These attributes of the Rhode Island enactment undermine the intent of Congress in conferring diversity jurisdiction. As I said in *Wheeler,* "diversity jurisdiction was designed primarily to give out-of-state suitors the option of an impartial forum, free from any bias local courts might exercise in favor of in-state parties." 78 F.R.D. at 222. Forcing a claimant who satisfies the requisites of diversity jurisdiction to prosecute his claim before a State judicial body which has the power to dismiss his claim with prejudice, deprives the claimant of the choice of forums intended by Congress. This deprivation presents an actual and substantial conflict with the policy of Congress to permit plaintiffs who satisfy certain requirements a choice whether to proceed in a State or in a Federal forum. The kind of substantial intrusion on Congressionally defined Federal Court jurisdiction that would be created by the Rhode Island enactment, as interpreted, would violate the Supremacy Clause [1] and, arguably the lan-

---

1. U.S.Const. art. VI, cl. 2. *See New York Tel. Co. v. New York State Department of Labor,* 440 U.S. 519, 539–40, 544–45, 99 S.Ct. 1328, 1340–41, 59 L.Ed.2d 553 (1979) (preemption); *Perez v. Campbell,* 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971).

In *Railway Company v. Whitton's Administrator,* 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1871), the Supreme Court stated:

> In all cases where a general right is thus conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provisions of State legislation that it shall only be enforced in a State court. The statutes of nearly every State provide for the institution of numerous suits, such as for partition, foreclosure, and the recovery of real property in particular courts and in the counties where the land is situated, yet it never has been pretended that limitations of this character

could affect, in any respect the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such a case, is not subject to State limitation.
> *Id.* at 286.

In considering the Massachusetts statute at issue in *Feinstein,* the First Circuit concluded that *Whitton's Administrator* was "inappropriate" because the Massachusetts statute did not: "attempt[ ] to confine medical malpractice actions to state courts. Rather, [it] creates a screening mechanism through which every malpractice claim must proceed before being pursued in court." 643 F.2d at 888. The Rhode Island statute that I am considering, how-

guage of the Rules of Decision Act. *See* Note, Medical Malpractice Panels and Federal Diversity Jurisdiction, 66 Cornell L.Rev. 337, 345 and n. 54 (1980). Accordingly, I hold that this Court need not transfer pending diversity medical malpractice cases for screening by a State Superior Court Judge.

### 2. Application of the Screening Procedure by a Federal Judge

An interpretation of R.I.G.L. § 10–19–1, et seq. that would require a Federal Court Judge, instead of a State Superior Court Judge, to make the necessary preliminary determination in diversity cases would not suffer from the problem of causing an ouster of federal jurisdiction. Thus, the Rules of Decision Act, 28 U.S.C. § 1652, mandating application of "[t]he laws of the several States, except where the Constitution or treaties of the United States or Acts of Congress otherwise provide . . ." could, depending on the nature of the State's requirements, necessitate application of the State procedure in Federal Court. Resolution of this question will require application of the doctrine announced in *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and refined in numerous subsequent cases.[2]

Resolution of the *Erie* questions presented in this case requires, first, a construction of the nature of the required finding mandated by the Rhode Island statute. The language of the statute provides that the Judge, after hearing, shall make a "finding of fact as to whether the evidence presented if properly substantiated and viewed in the light most favorable to the plaintiff would be sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." If the finding is of an "unfortunate medical result," the action must be dismissed with prejudice. By characterizing the finding as one of "fact" and including the clause "whether the plaintiff's case is merely an unfortunate medical result" after the disjunctive "or," it could be argued that application of the State requirement would significantly alter the judge-jury relationship in Federal Court. Even in the statute considered in *Wheeler*, the legislature did not give the "panel" the power to dismiss with prejudice based on its "finding of fact." A judge usually makes rulings of *"law"* regarding sufficiency of the evidence, and dismissals are proper only where the evidence presented is insufficient as a matter of law, or when no legally cognizable claim has been presented. For a judge to make a factual determination whether, based on the evidence presented, a plaintiff's claim is based on an "unfortunate medical result" would be to usurp the function of the jury and not merely, as in *Wheeler*, to affect it. Accordingly, if the Rhode Island statute requires the judge to make a preliminary factual determination on the merits of plaintiff's claim, I hold that, at the minimum, it contravenes the important federal interest[3] in preserving

ever, requires that a malpractice claim be pursued initially in State Court before a State Superior Court Judge. Hence, the "screening mechanism" is the State Court itself. This attribute of the Rhode Island scheme makes the Supreme Court case of *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949)—relied on by the Court in *Feinstein*—inapposite to the case at hand. In *Woods*, the Supreme Court held that a federal court sitting in diversity must apply a state "door-closing" statute that prohibited enforcement of a state cause of action, even in the state courts by an unregistered foreign corporation. The state statute considered in *Woods* differs fundamentally from the Rhode Island statute being considered in the case at bar.

Application of this statute would *mandate* enforcement in the State Court prior to any possibility of Federal Court consideration; hence, the Rhode Island statute is not a "door-closing statute." Accordingly, I must conclude that the prohibition of *Whitton's Administrator* governs this case.

2. The holdings of these cases have been explored elsewhere and, with respect to their impact on state medical malpractice statutes, the discussions in *Wheeler*, 78 F.R.D. at 223–25, and *Feinstein*, 643 F.2d at 883–87 suffice for purposes of this decision.

3. The state policies underlying the new procedural mechanism for processing medical mal-

the judge-jury relationship and cannot be applied in Federal Court. *See Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).[4]

■ The preliminary determination required of a judge by the Rhode Island statute could also be interpreted to require application of something similar to the standard by which the sufficiency of evidence is tested when a party makes a motion for directed verdict under Federal Rule of Civil Procedure 50. *See* C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2524, at 543 (1971). Although the language of the Massachusetts statute considered in *Feinstein* does not—like the language in the Rhode Island counterpart—characterize the tribunal's finding as one of "fact", the legislature's characterization of the required finding after a preliminary hearing in Massachusetts is virtually identical to that required of the Judge by Rhode Island's enactment.[5] The Supreme Judicial Court of Massachusetts has interpreted the finding required by the Massachusetts statute to require evaluation of the evidence

"in the manner in which a judge presiding at a civil trial would do 'in ruling on a defendant's motion for directed verdict.'" *McMahon v. Glixman*, Mass.Adv.Sh. 2277, 2284, 393 N.E.2d 875 (1979) *quoting Little v. Rosenthal*, Mass.Adv.Sh. 2793, 2798–99, 376 Mass. 573, 382 N.E.2d 1037. Thus, it is plausible that the Rhode Island legislature desired to accomplish the same standard of evaluation under its medical malpractice enactment.[6] If so, this raises the question whether, under *Erie*, a Federal Court Judge must, in all diversity medical malpractice cases, conduct an evidentiary hearing within ninety days of the answer, after which he or she is to apply something in the nature of a directed verdict standard to the evidence presented. For the following reasons, I conclude that the Federal Judge does not have to apply this procedure to medical malpractice cases properly commenced in Federal Court.

The nature of the administrative burdens imposed by Rhode Island's new medical malpractice act differ somewhat from those which concerned the Court in *Wheeler*, 78

---

practice cases do not appear to differ from those set out in some detail in my opinion in *Wheeler*, 78 F.R.D. at 227–28. The May, 1981 amendment which altered the screening mechanism was apparently the result of a legislative compromise. The Rhode Island House of Representatives favored total elimination of the screening mechanism because it had proven costly and ineffective. The Rhode Island Senate, on the other hand, favored retention of some kind of screening process.

My reference to state policies is with some reluctance because the First Circuit in *Feinstein* cast doubt on whether State policies are at all relevant to the balancing test utilized by the Supreme Court in *Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). *See Feinstein v. Massachusetts General Hospital*, 643 F.2d at 890 n. 14.

4. Although I find it unnecessary to reach the question, the ability of a State Superior Court Judge to dismiss with prejudice based on a "finding of fact," regardless of whether plaintiff desires a jury trial, would seem to contravene Seventh Amendment guarantees. *See, e. g., Ex Parte Peterson*, 253 U.S. 300, 309, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920).

5. The Massachusetts panel

shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result. Mass.Gen.Laws, ch. 231, § 60B

After hearing in Rhode Island, the Judge shall determine

whether the evidence presented if properly substantiated and viewed in the light most favorable to the plaintiff would be sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result. R.I.G.L. § 10–19–4 (1981).

6. Close scrutiny of the two statutory schemes, however, casts doubt on the plausibility of this conclusion. The Massachusetts scheme contemplates an "offer of proof" by plaintiff. Mass.Gen.Laws, ch. 231, § 60B. The Rhode Island scheme, on the other hand, contemplates some sort of adversarial presentation by both sides to the dispute. Applying the applicable standard under the Rhode Island scheme would require, almost of necessity, resolution of factual disputes whereas, under the Massachusetts procedure, it would be relatively easy for a Judge to determine the *legal* sufficiency of plaintiff's "offer of proof."

F.R.D. at 228–29, and which were acknowledged by the Court in *Feinstein*, 643 F.2d at 888 n. 11. Whereas application in Federal Court of Rhode Island's previous "panel" requirement would have necessitated extra personnel and the concomitant costs of supervising this personnel, the current Rhode Island enactment would require a federal judge himself to conduct and manage the preliminary proceeding. This difference, however, will not minimize the magnitude of the burdens that would be imposed by implementation of the State procedure in Federal Court.

In effect, the Rhode Island enactment would require two trials. The first, to be conducted within ninety days of the answer, would be a trial to the Judge, after which the Judge would make a determination whether plaintiff had presented sufficiently compelling evidence of malpractice to justify a jury trial. If plaintiff had not met the burden, the action would be dismissed. If plaintiff made the required showing, the action would then presumably be scheduled for a jury trial.

The State requirement would impose significant and potentially onerous burdens on the already overburdened Federal Judges in this State. The addition of the preliminary bench-trial requirement within a prescribed number of days would serve to disrupt the orderly flow of cases.[7] The insertion of another variable into the already complex scheduling difficulties facing the Federal Court simply could not be accomplished without exacting some offsetting sacrifices in terms of longer disposition times and increased administrative expense. The

scheduling problems would be exacerbated by the size of the Federal Court in this State. Although I cannot find any indication in the state enactment, it may well not be proper for the same judge who conducted the bench trial to conduct the jury trial at a later date.[8] In a two-judge court, such a prohibition would further decrease the flexibility necessary to efficiently dispose of cases and motions.

I also perceive other costs associated with Federal Court implementation of the State's preliminary hearing requirement. The most apparent would be the damage to the strong federal policy in favor of liberal discovery prior to determinative rulings in a case. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947). The State's requirement that a hearing at which plaintiff's case is put to the test be undertaken within ninety days of the filing of an answer will put a premium on tactics designed to delay discovery. Particularly in medical malpractice cases where defendants have sole access to virtually all of the relevant information, the ninety-day hearing requirement might well reinstitute the "sporting theory" of advocacy. Certainly, such a requirement will encourage unscrupulous defendants to delay production of materials long enough to prevent a plaintiff from assimilating and coordinating the necessary evidence. To the extent that such a consequence could result in a dismissal with prejudice, it might be considered worth at least a try—particular-

---

7. The Federal Speedy Trial Act's, 18 U.S.C. § 3161, et seq., effect on the calendar of this Court has been unprecedented. *See also, United States v. Brainer*, 515 F.Supp. 627 (D.Md. 1981). This effect is largely attributable to the arbitrary time limitations imposed on the judiciary by the Act's terms. Application of the Rhode Island procedure in this Court would create another situation in which priority treatment would have to be given a subclass of cases. While the subclass may be benefitted, the Court's remaining cases are of necessity delayed. Moreover, the Rhode Island preliminary bench-trial mechanism would in some cases be only the first step. A finding for

plaintiff at this step would necessitate a trial de novo at a later date. Hence, the Rhode Island scheme would arguably prove more burdensome than the federal Speedy Trial Act's time limits have been.

8. The Rhode Island procedure envisions an inquisition-like proceeding in which the Judge takes an active role in ferreting out the relevant evidence, subpoenaing witnesses, and assigning experts. *See* R.I.G.L. § 10–19–3. I have doubts whether a judge who has presided over a hearing in the nature of an inquisition could ever properly serve as a neutral arbiter at a later re-trial of the case.

ly against an out-of-state plaintiff who already suffers some inconvenience associated with prosecuting his case. The potential for such activities simply cannot be squared with a federal discovery system premised on the idea that the search for truth should not be constrained by who has possession of the pertinent information.

In addition, it remains unclear to me just how the preliminary bench-trial requirement will be assimilated into the regular pre-trial mechanisms for disposing of cases. For example, how would a determination, based on the evidentiary hearing, that plaintiff had raised a legitimate question of liability appropriate for judicial inquiry, affect a subsequent motion for Summary Judgment under Rule 56? Assuming that a directed verdict standard had been applied in the hearing, could the Judge later, on the basis of affidavits, conclude that no fact issues were present and that defendant was entitled to judgment as a matter of law? Could the Judge go beyond the affidavits to the prior testimony in ruling on the motion? By this example, I do not mean to suggest that a Judge could not make such determinations; I merely desire to point out that the seemingly simple act of inserting a new preliminary proceeding into the trial of a case can and will have ripple-effects with which the District Court will have to contend. Although such effects may not amount to the direct conflict with the Federal Rules found in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *see Walker v. Armco Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), it will make the efficient administration of a case more difficult and will certainly disrupt the policy, evinced in the Federal Rules, in favor of liberal discovery.[9]

Accordingly, I hold that the federal interest in efficient administration of cases and in controlling the administrative burdens associated with implementation of the State's mechanism in the Federal Courts, justifies a refusal to incorporate the Rhode Island medical malpractice requirements of R.I.G.L. § 10–19–1, et seq. in federal diversity cases.

Defendants motions are denied.

So Ordered.

9. The potential forum-shopping and inequitable administration of justice concerns underlying *Erie* do not persuade me that application of the State procedure is necessary. As the Court made clear in *Hanna*, "nonsubstantial, or trivial, variations [are] not likely to raise the sort of equal protection problems which troubled the Court in *Erie*, they are also unlikely to influence the choice of a forum." 380 U.S. at 468, 85 S.Ct. at 1142. As I view it, the availability of the State's preliminary bench-trial mechanism in State Court will not work so severe an alteration in the ultimate disposition of cases as to create unfair discrimination against Rhode Island plaintiffs. By the same token, application of the procedure would not have "so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose federal court." *Id.* n. 9. Although subsequent State interpretations of the statute could alter this perception, I am not prepared at this time to say that failure to apply the Rhode Island mechanism in Federal Court will undermine the twin aims of *Erie*.