Mary **HEWETT**, Plaintiff,

v.

**INLAND HOSPITAL**, et al., Defendants.

No. Civ. 98–CV–206–B.

United States District Court, D. Maine.

Feb. 3, 1999.

Sumner H. Lipman, Lipman & Katz, Augusta, ME, for plaintiff.

Ernest J. Babcock, Friedman, Babcock & Gaythwaite, Portland, ME, for defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff Mary Hewett ("Plaintiff") brings this action against Defendants Inland Hospital ("Inland") and Brian Gretta, M.D. ("Gretta"). Plaintiff alleges that Inland violated its duties pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C.A. § 1395dd (West Supp.1998) ("EMTALA") (Count I)[1] and that Inland and Gretta were negligent under state law (Count II). Before the Court is Defendants' Motion to Dismiss on all Counts of Plaintiff's Complaint based on their contention that Plaintiff failed to comply with the requirements of the Maine Health Security Act ("MHSA"), Me. Rev.Stat.Ann. tit. 24, §§ 2851–2961 (West 1990 & Supp.1997) before filing her claims in federal court. Also before the Court is Defendants' Motion to Stay Discovery on Count I. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants' Motion to Stay Discovery is DENIED.

## I. BACKGROUND

Plaintiff's claims arise out of events that occurred on October 24–25, 1996. On October 24, 1996, Plaintiff's husband, Elwyn Hewett, visited Inland's Emergency Room complaining of abdominal pain. Mr. Hew-

ett was sent home three hours later after being diagnosed with a urinary tract infection by Gretta. The next day, Mr. Hewett returned to Inland's Emergency Room by ambulance. He died several hours later as the result of a ruptured abdominal aortic aneurysm.

Plaintiff filed the present action in federal district court on October 13, 1998. It is undisputed that on or about the same date, Plaintiff filed a "Notice of Claim" against Defendants in Kennebec County Superior Court pursuant to Me.Rev.Stat.Ann. tit. 24, § 2903 (West 1990 & Supp.1997). Defendants also allege, without objection, that Plaintiff has not submitted her claim to a pre-litigation screening panel as required by Me.Rev.Stat.Ann. tit. 24, §§ 2851–59 (West 1990 & Supp.1997).

## II. DISCUSSION

To commence an action for professional negligence against a health care practitioner or provider, Maine law requires that a plaintiff file a written notice of claim with the court and serve it on the person accused of professional negligence. *See* Me. Rev.Stat.Ann. tit. 24, § 2853(1) (West Supp.1997). Unless waived by the defendant, a plaintiff's claim must then be evaluated by a pre-litigation panel before it is allowed to proceed to litigation. *See* Me. Rev.Stat.Ann. tit. 24, §§ 2851–59 (West 1990 & Supp.1997); *see also Choroszy v. Tso*, 647 A.2d 803, 805 n. 1 (Me.1994) (explaining statutory scheme). Defendants argue that both Plaintiff's state law negligence claims and Plaintiff's federal EMTALA claim must be dismissed for failure to comply with these requirements. In support of their argument, Defendants cite two District of Maine cases holding that the requirements of the MHSA apply to a plaintiff in a medical malpractice diversity action. *See Houk v. Furman*, 613 F.Supp. 1022, 1027 (D.Me.1985); *cf. Brown v. Timothy*, 672 F.Supp. 538, 539 n.

---

**1.** Count I of the Complaint also asserted an EMTALA claim against Gretta. Plaintiff agreed to dismiss this claim on January 14, 1999. (Pl's Resp. to Gretta's Mot. to Dismiss.)

**86**

4 (D.Me.1987) (noting that parties did not dispute holding in *Houk*). Plaintiff responds that these cases are inapposite to a case, such as the one at bar, in which jurisdiction is based on federal law, rather than diversity. While the Court agrees with Plaintiff that the MHSA does not govern the progress of an EMTALA claim in federal court, the Court finds that it cannot adjudicate the state law negligence claims before they are heard by the screening panel.

### A. EMTALA Claim

■ Congress enacted the Emergency Medical Treatment and Active Labor Act, 42 U.S.C.A. § 1395dd (West Supp.1998) in 1986 in response to growing concern that hospitals were "dumping" uninsured patients. *See Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1189 (1st Cir.1995). The statute requires hospitals to screen all patients presenting themselves at emergency rooms for emergency medical conditions. *See* 42 U.S.C.A. § 1395dd(a) (West Supp. 1998). The statute further directs hospitals to stabilize patients in emergency condition and restricts the transfer of unstable patients to other hospitals. *See id.* § 1395dd(b) & (c).

The Court exercises original jurisdiction over EMTALA claims since they arise under federal law. *See* U.S. Const. art. III; 28 U.S.C. § 1331 (1994). As Plaintiff notes, no case in the District of Maine or the First Circuit has yet addressed the issue of whether a state statute requiring pre-litigation notice and screening of medical malpractice claims applies to actions arising under EMTALA. *See Wilson v. Atlanticare Med. Ctr.*, 868 F.2d 34 (1st Cir.1989) (declining to consider whether state statute governing medical malpractice claims applied to suits under EMTALA because plaintiff failed to preserve issue for appeal). Nevertheless, the Court is persuaded by the reasoning of those courts in other jurisdictions which have considered the issue that EMTALA does not incorporate and directly conflicts with similar state law requirements. *See Power v. Arlington Hosp. Ass'n.*, 42 F.3d 851, 866 (4th Cir.1994) (finding state statute's requirement that malpractice claim be submitted to screening panel did not apply to EMTALA claim because requirement was not incorporated by EMTALA and directly conflicted with EMTALA's two-year statute of limitations); *Keating v. Tangipahoa Hosp.*, Civ.A. No. 94–3799, 1995 WL 91128, at *2 (E.D.La. March 1, 1995) (same); *Reid v. Ind. Osteopathic Medical Hosp.*, 709 F.Supp. 853 (S.D.Ind. 1989) (same); *Bowen v. Mercy Memorial Hosp.*, No. 95–CV–73116, 1995 WL 805189, at *3 (E.D.Mi. Dec.8, 1995) (finding state law 182–day pre-suit notice requirement not incorporated by EMTALA and inconsistent with it); *Cooper v. Gulf Breeze Hosp.*, 839 F.Supp. 1538, 1543 (N.D.Fla. 1993) (holding EMTALA does not incorporate pre-suit procedures required by state statute). Defendants' Motion to Dismiss is therefore denied as to Count I.

### B. Negligence claims

■ The remaining issue concerns application of the MHSA's pre-litigation notice and screening requirements to Plaintiff's state law malpractice claims. The Court may exercise supplemental jurisdiction over these claims because they and the EMTALA claim over which the Court has original jurisdiction arise out of a common nucleus of operative facts. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367 (1994). "The nature of the inquiry by which it is decided which law to apply in nondiversity cases is the same as that governing the choice in diversity cases." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4520 (2d ed.1984); *see also Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1345 (1st Cir.1988) (upholding award of prejudgment interest on supplemental state claim pursuant to substantive state law); *Turner v. Sullivan*, 937 F.Supp. 79,

80 (D.Mass.1996) (finding same law applies regardless of whether claim based on supplemental or diversity jurisdiction).

As noted above, the District of Maine has held that the MHSA applies to medical malpractice claims filed in federal court on the basis of diversity. *See Houk v. Furman*, 613 F.Supp. 1022, 1027 (D.Me.1985). In *Houk*, the Court considered an earlier version of the MHSA which mandated simply that a plaintiff file pre-litigation notice of a medical malpractice claim. *See id.* at 1026. The plaintiff in that case distinguished the Act's notice requirement from statutes in other states which mandated the submission of claims to screening panels and argued that the notice requirement was "purely procedural and [did] not apply in a federal diversity action under the Rules of Decision Act, 28 U.S.C. § 1652, and *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." *Id.* Applying the *Erie* analysis as refined in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) and *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Court rejected this argument. It found that the pre-litigation notice requirement was an integral part of the Maine statute of limitations for malpractice actions, that the requirement did not directly conflict with any federal law, and that refusal to apply the requirement in a diversity case "would produce an inequitable administration of Maine law as between resident and nonresident plaintiffs in malpractice actions." *Houk*, 613 F.Supp. at 1027.

Applying the reasoning in *Houk*, the Court finds that it is currently precluded from hearing Plaintiff's malpractice claims by the present version of the MHSA which requires submission of claims to a pre-litigation screening panel as well as pre-litigation notice. *See also Feinstein v. Mass. General Hosp.*, 643 F.2d 880 (1st Cir.1981) (holding that Massachusetts statute requiring referral of medical malpractice claim to tribunal applicable in diversity case). Submission of claims to a pre-litigation screening panel clearly is " 'intimately bound up' with the rights and obligations of the parties to Maine medical malpractice claims." *Houk*, 613 F.Supp. at 1027 (quoting *Feinstein*, 643 F.2d 880 (1st Cir.1981)). The pre-litigation screening requirement for state law medical malpractice claims does not conflict with any federal law. Finally, failure to apply the requirement in federal court would unfairly advantage plaintiffs who allege a violation of EMTALA or another federal statute in addition to their malpractice claims.

Plaintiff asks the Court to consider a case from the Middle District of Florida in which state negligence claims were presented along with an EMTALA claim. *See Jones v. Garcia*, 936 F.Supp. 929, 931 (M.D.Fla.1996). She argues that the *Jones* Court's decision to retain jurisdiction over routine malpractice claims supports her position that this Court should deny Defendants' Motion to Dismiss her malpractice claims. The Court disagrees. The issue in *Jones* was whether the Court should exercise its discretion under 28 U.S.C. § 1367 (1994) to hear the supplemental state claims, not whether it should apply a state statute mandating the submission of such claims to a pre-litigation screening panel. *See id.* In fact, the *Jones* Court suggested that a decision not to remand the state claims to state court could delay the entire case for several years because the plaintiff was required to comply with the procedural requirements of Florida's medical malpractice scheme. *See id.*

The Court also finds the case at bar distinguishable from *Hibbs v. Yashar*, 522 F.Supp. 247 (D.R.I.1981) in which the District Court found that a Rhode Island statute mandating submission of medical malpractice cases to a state judge for pre-litigation review was not applicable to diversity actions for malpractice. *See id.* at 249–54. The holding rested on the fact that the statute at issue in that case provided that a malpractice action should be dismissed with prejudice upon a finding by the judge that there was no liability. *See*

*id.* at 249. Here, the MHSA does not prevent a plaintiff who receives an unfavorable decision from the screening panel from proceeding to litigation. *See* Me.Rev. Stat.Ann. tit. 24, § 2857 (West 1990).

The Court therefore finds that Plaintiff must submit her negligence claims to a pre-litigation screening panel in compliance with the MHSA. *See Turner v. Sullivan,* 937 F.Supp. 79, 80 (D.Mass.1996) (finding Massachusetts statute requiring submission of claims to tribunal applicable to supplemental malpractice claim). The Court remands the negligence claims to state court because retaining jurisdiction until the conclusion of the screening panel proceedings would unduly delay resolution of the EMTALA claim and thus outweighs the judicial economy gained if this Court were to consider the attendant claims. The Court retains jurisdiction over Plaintiff's EMTALA claim, however, and denies Defendants' Motion to Stay Discovery on that claim.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is DENIED as to Count I of Plaintiff's Complaint and GRANTED as to Count II. Plaintiff's negligence claims against Inland and Gretta are remanded to state court. Defendants' Motion to Stay Discovery on Count I is DENIED.

*SO ORDERED.*