**Melissa Irene FERRIS, Plaintiff,**

v.

**COUNTY OF KENNEBEC,
et al., Defendants.**

**No. Civ. 98–CV–201–B.**

United States District Court,
D. Maine.

March 5, 1999.

William D. Robitzek, Berman & Simmons, P.A., Lewiston, Maine, for plaintiff.

William R. Fisher, Portland, Maine, for defendants Gustafson, Belleveau & Kennebec County.

Jeffrey Bennett, Bennett, Bennett & Troiano, P.A., Portland, Maine, for defendants Garcia & Sproul.

Matthew Lamourie, Preti, Flaherty, Beliveau & Pachios, Portland, Maine, for Allied Resources.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This multi-count action concerns medical treatment provided to Plaintiff Melissa Irene Ferris ("Plaintiff") during a period of pre-trial detention in the Kennebec County Jail on June 13–14, 1996. Defendants are the County of Kennebec, Allied Resources for Correctional Health ("ARCH"), Sergeant Bellavance ("Bellavance"), Officer Gustafson ("Gustafson"), and Nurse Sprowl ("Sprowl"). Before the Court is Sprowl's Motion to Dismiss all Counts against her. In her Amended Complaint, Plaintiff alleges that Sprowl (1) violated her Due Process and Equal Protection rights and her right to be free from cruel and unusual punishment under the Maine and United States Constitutions (Count I), (2) negligently failed to provide medical treatment (Count II), and (3) negligently inflicted emotional distress (Count III). For the reasons stated below, Sprowl's Motion to Dismiss Counts is GRANTED as to Count II and DENIED as to Counts I and III.

## I. BACKGROUND

The following factual summary sets forth only those facts relevant to Sprowl's Motion to Dismiss. All facts alleged by Plaintiff are accepted as true and all reasonable inferences are drawn in her favor. *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996).

Plaintiff was arrested on or about June 13, 1996 and committed to the custody of the Kennebec County Jail. During her intake interview, conducted by Gustafson, Plaintiff stated that she was pregnant.

On the evening of June 14, 1996, Plaintiff experienced vaginal bleeding while in custody and complained to Sprowl that she was having a miscarriage. Sprowl was a nurse employed by ARCH, an organization acting as an agent of Kennebec County for the provision of medical services to jail inmates. Plaintiff told Sprowl that she knew she was having a miscarriage because she had suffered one in 1991.

Sprowl took Plaintiff's pulse and told her that her pulse rate indicated she was menstruating, not having a miscarriage. Sprowl refused Plaintiff's request for sanitary pads and ordered her to lie down. Though Plaintiff initially complied with Sprowl's order, she was unable to remain

lying down because it made her feel worse. Sprowl informed Plaintiff that she would be transferred to another cell because she refused to follow Sprowl's order to lie down. Plaintiff continued to complain of severe pain.

Some time later, Gustafson moved Plaintiff to a small cell on another floor, following which she had no further contact with Sprowl. At approximately 2 A.M. on the morning of June 15, 1996, Plaintiff had a miscarriage in her cell.

Plaintiff filed notice of suit pursuant to the Maine Tort Claims Act, Me.Rev.Stat. Ann. tit. 14, § 8101–8118 ("MTCA") on December 10, 1996 and filed suit in state court on September 21, 1998. On October 7, 1998, the action was removed to federal court.

## II. DISCUSSION

The basis for Sprowl's Motion to Dismiss is three-fold. First, she argues that Counts II and III, alleging negligent treatment and negligent infliction of emotional distress respectively, should be dismissed as to her to the extent that Plaintiff also seeks to hold ARCH vicariously liable for her negligence. Second, Sprowl asserts that the Court lacks jurisdiction over Counts II and III because Plaintiff failed to comply with the procedural requirements of the MTCA and of the Maine Health Security Act, Me.Rev.Stat.Ann. tit. 24, §§ 2501–2961 ("MHSA"). Third, Sprowl argues that Count I fails to state a claim under 42 U.S.C. § 1983, or, in the alternative, that she is entitled to qualified immunity. The Court will examine each of these arguments in turn.

### A. Negligence Claims against Sprowl for which Plaintiff Seeks to Hold ARCH Vicariously Liable

■ Sprowl seeks dismissal of Counts II and III on the ground that Maine law precludes Plaintiff from simultaneously asserting negligence claims against her and vicarious liability claims against her employer, ARCH. While Sprowl's position accurately reflects the holdings of *Hobbs v. Hurley*, 117 Me. 449, 104 A. 815 (1918) and *Sinclair v. Gannett*, 148 Me. 229, 91 A.2d 551 (1952), these cases have since been "abrogated by the liberal joinder rules of the Maine Rules of Civil Procedure," Donald N. Zillman et al., *Maine Tort Law* § 16.02, at 5 & n. 19 (1994), which permit a claim for joint and several liability against "a master and servant in a single action arising out of the latter's negligence." Maine R.Civ.P. 20 reporter's note. On this basis, Sprowl's Motion to Dismiss is denied as to Counts II and III.

### B. Lack of Jurisdiction

#### 1. MTCA

■ The MTCA requires that notice of a tort claim against a political subdivision or an employee thereof be filed no more than 180 days after the cause of action accrues. *See* Me.Rev.Stat.Ann. tit. 14, § 8107(1) & (3)(B) (West 1980 & Supp. 1997). Plaintiff, by regular and certified mail, sent written notice of her suit against Kennebec County and its employees, including Sprowl, to the commissioners and sheriff of Kennebec County on December 10, 1996.[1] Sprowl argues that notice mailed on December 10, 1996 concerning a cause of action which accrued on June 13 or 14, 1996 is untimely, and therefore the Court lacks jurisdiction over Counts II and III of Plaintiff's Amended Compliant.

■ Sprowl's argument is premised on her assumption that, under Rule 6(d) of the Maine Rules of Civil Procedure, notice that is mailed is not deemed "filed" pursuant to the MTCA until three days after

---

1. Plaintiff did not plead compliance with the MTCA. In her Response to Sprowl's Motion to Dismiss, however, Plaintiff attached a copy of the notice showing the mailing date. A plaintiff is entitled to rely on extra-pleading material to establish the existence of subject matter jurisdiction. *See Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 699 (1st Cir. 1979).

mailing. The three day grace period for mailing to which Sprowl refers, however, concerns the time period in which the recipient of a mailing is required to respond, not the time when a mailing is deemed filed. *See* Maine R.Civ.P. 6(d). As the Maine Law Court has explained, "the logic behind [Rule 6(d) ] is that generally service by mail is complete upon mailing, M.R.Civ.P. 5(b), and therefore, three days is added to a prescribed time period for acts that follow such service." *Scott Dugas Trucking & Excavating, Inc. v. Homeplace Building & Remodeling, Inc.*, 651 A.2d 327, 329 (Me.1994). Thus, regardless of whether Plaintiff's claim accrued on June 13, 1996, the day she entered the Kennebec County Jail, or on June 14, 1996, the day she was seen by Sprowl, the Court finds that Plaintiff complied with the notice provisions of the MTCA.

### 2. MHSA

■ Sprowl asserts, and Plaintiff does not dispute, that Count II is subject to the MHSA, which provides that an action for professional negligence against a health care provider or practitioner is commenced by filing a written notice of claim with the court and serving it on the person accused of professional negligence. *See* Me.Rev. Stat.Ann. tit. 24, § 2853(1) (West Supp. 1997). Unless waived by the defendant, the Act requires that a plaintiff's claim be evaluated by a screening panel before it is allowed to proceed to litigation. *See id.* at § 2851–59; *see also Choroszy v. Tso*, 647 A.2d 803, 805 n. 1 (Me.1994) (explaining statutory scheme). According to Sprowl, the Court lacks jurisdiction over Count II because Plaintiff has failed to comply with these requirements.

■ While the Court finds that Plaintiff has not satisfied her procedural obligations under the MHSA, this fact does

not deprive the Court of jurisdiction over Count II since the Court's authority to adjudicate the medical negligence claim derives not from the MHSA, but from the claim's status as supplemental to Plaintiff's Section 1983 claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (finding federal court may exercise supplemental jurisdiction over state law claim where it arises out of same nucleus of operative facts as federal claim); 28 U.S.C. § 1367 (1994). Nevertheless, this Court recently has held that a plaintiff must comply with the MHSA's pre-litigation notice and screening requirements before her supplemental claim can proceed in federal court. *See Hewett v. Inland Hosp.*, 39 F.Supp.2d 84, (D.Me.1999). Though the Court is free, as it was in *Hewett*, to retain jurisdiction over the claim until the pre-litigation screening process has concluded, the Court exercises its discretion under 28 U.S.C. § 1367 to dismiss Count II. To do otherwise would unnecessarily delay resolution of the other federal and state claims.

### C. Failure to State a Claim and Qualified Immunity

### 1. Failure to State a Claim

■ Count I of Plaintiff's Amended Complaint alleges that Sprowl, acting under color of state law, deprived Plaintiff of her constitutional rights under the Eighth and Fourteenth Amendment by failing to provide her with medical treatment while she was a pre-trial detainee at the Kennebec County Jail.[2] The parties agree that the appropriate measure of a constitutional violation in the context of the provision of medical services to a pre-trial detainee is whether a defendant was deliberately indifferent to a detainee's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97,

---

**2.** A pre-trial detainee's right to medical care is grounded in the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition of cruel and unusual punishment. *See City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244,

103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). However, this right is "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.; see also Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990).

106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Gaudreault*, 923 F.2d at 208. In addition, Sprowl stipulates, for purposes of this Motion, that she was acting under color of state law. Thus, the issue for the Court is whether, viewing all of Plaintiff's factual averments as true and indulging every reasonable inference in Plaintiff's favor, *see Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996), Plaintiff can show that Sprowl acted with deliberate indifference in treating or failing to treat Plaintiff's serious medical needs. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990) (stating that "defendant is entitled to dismissal only if it clearly appears that plaintiff cannot recover on any viable theory").

■ In her Amended Complaint, Plaintiff alleges she told Sprowl that she was experiencing vaginal bleeding and that she believed based on past experience that she was having a miscarriage. According to Plaintiff, Sprowl responded by taking Plaintiff's pulse and concluding that she was menstruating. Plaintiff states that Sprowl refused her request for sanitary pads and instructed her to lie on her bunk. Sprowl apparently did not check on Plaintiff again except to inform her that she would be transferred to another cell because she failed to follow Sprowl's order to remain lying down. Plaintiff states that she suffered a miscarriage several hours later.

The Court finds that Plaintiff's allegations are sufficient to make out a viable due process claim pursuant to Section 1983. First, the medical condition of which Plaintiff complained was plainly serious. *See Gaudreault*, 923 F.2d at 208 ("a medical need is 'serious' if it is one that ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"). Second, Sprowl apparently made no effort to assess or treat Plaintiff's complaint beyond taking Plaintiff's pulse and ordering her to lie down. " '[W]here the dispute concerns not the absence of help, but the choice of a certain course of treatment,' deliberate indifference may be found where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.' " *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir.1991) (internal citations omitted). Here, Sprowl's "choice ... of treatment" in response to Plaintiff's complaint of a miscarriage reasonably could be viewed as sufficiently inadequate to constitute deliberate indifference. Sprowl's Motion to Dismiss for failure to state a claim therefore is denied.

2. Qualified Immunity

■ Sprowl's contention that her liability is precluded by qualified immunity is similarly unpersuasive. To assess a claim of qualified immunity a court must determine (i) whether the plaintiff has alleged the violation of a clearly established right, and (ii) whether a reasonable, similarly situated defendant would have understood that the challenged conduct violated that clearly established right. *See Swain v. Spinney*, 117 F.3d 1, 9 (1st Cir.1997); *Comfort v. Town of Pittsfield*, 924 F.Supp. 1219, 1227 (D.Me.1996). Sprowl admits that deliberate indifference to a pre-trial detainee's serious medical needs constitutes a violation of the state's clearly established obligation to provide detainees with adequate medical care. She asserts, however, that a reasonable person in her position would not have understood that her treatment of Plaintiff, or lack thereof, violated this clearly established standard. The Court rejects this contention. Not only did Sprowl rely exclusively on Plaintiff's pulse rate to determine that she was not having a miscarriage, she made no attempt to confirm whether Plaintiff was pregnant. Moreover, after erroneously diagnosing Plaintiff's bleeding as the result of menstruation, Sprowl refused to provide her with sanitary supplies. Then, despite Plaintiff's continuing complaints of pain, Sprowl left her without medical attention for the remainder of her detention. These facts, taken as true, support a claim that

**68**

Sprowl reasonably should have understood that such minimal care constituted deliberate indifference to Plaintiff's serious medical needs in violation of her clearly established rights.

Because Plaintiff has stated a due process claim and Sprowl does not enjoy the protection of qualified immunity at this juncture, the Motion to Dismiss is denied as to Count I.

### III.  CONCLUSION

For the reasons stated above, Sprowl's Motion to Dismiss is GRANTED as to Count II and DENIED as to Counts I and III.

*SO ORDERED.*