**David C. FAULKINGHAM, Plaintiff**

v.

**PENOBSCOT COUNTY JAIL, et al., Defendants**

**No. CIV. 04–48–B–K.**

United States District Court, D. Maine.

Dec. 22, 2004.

David C Faulkingham, Cumberland County Jail, Portland, Pro se.

Michael J. Schmidt, Wheeler & Arey, P.A., Waterville, ME, for Penobscot County Jail, Linda Golden, Ty Babb.

Paul C. Catsos, Edward R. Benjamin, Jr., Thompson & Bowie, Portland, ME, for ARCH, Al Chicon.

Wendell G. Large, Barri L. Bloom, Richardson, Whitman, Large & Badger, Portland, ME, for Ron Byrum.

## MEMORANDUM OF DECISION [1]

KRAVCHUK, United States Magistrate Judge.

Defendant Ron Byrum has moved to dismiss or strike this complaint (Docket No. 69) because plaintiff David Faulkingham has never filed a notice of claim against him and has never submitted his claim to a State of Maine prelitigation medical screening panel. At the time this cause of action arose, Faulkingham was a prisoner at the Penobscot County Jail and Ron Byrum was employed as a medical services provider at the jail. In his response to the motion, Faulkingham clarifies that his complaint arises solely from a deprivation of his federal constitutional rights, that is, he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, as made applicable to pretrial detainees, because of the deprivation of care and treatment for his serious medical condition.

Defendant Byrum claims he is entitled to dismissal based upon the following theory:

> Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has neither alleged nor demonstrated compliance with the Maine Health Security Act prior to filing a Complaint to initiate this action. Pursuant to the Maine Health Security Act, a claimant must commence an action by

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

serving a Notice of Claim on the person accused of professional negligence, setting forth the professional negligence alleged and the nature and circumstances of the alleged damages. *See* 24 M.R.S.A. § 2853(1) (2000). In addition, the claimant must file the notice in the Superior Court and remit $200 filing fee to the Court. *See id.* at § 2853(1) & (1-B). Pursuant to the statute, all filings must be presented in compliance with the Act's strict confidentiality requirements. *See id.* at § 2853(1-A). Finally, "[*n*]*o action* for professional negligence may be commenced until the plaintiff ... has served and filed a written notice of claim in accordance with Section 2853." 24 M.R.S.A. § 2903 (2000) (emphasis added).

The Maine Health Security Act applies to "any action for damages for injury or death against any healthcare provider, its agents or employees, or healthcare practitioner, his agents or employees, whether based upon tort or breach of contract *or otherwise,* arising out of the provision for failure to provide health care services." *Hinkley v. Penobscot Valley Hospital,* 2002 ME 70, ¶ 8, 794 A.2d 643, 646 (quoting 24 M.R.S.A. § 2502 (2000) (emphasis added)). Maine's Law Court has construed the statutory language broadly such that practically all types of claims against those employed in the healthcare field are subject to the Maine Health Security Act requirements. *See Brand v. Seider,* 1997 ME 176, ¶ 4, 697 A.2d 846, 847 (claim of breach of confidentiality requires Maine Health Security Act compliance).

In this case, the allegations in the Plaintiff's Complaint make clear that this is a cause of action for damages arising out of the provision of health care services. Indeed, in its basest form, the Plaintiff's cause of action arises solely from the Defendants' failure to provide appropriate medical care and medication to him while he was incarcerated at the Penobscot County Jail. Plaintiff, therefore, has an undeniable obligation to comply with the provisions of the Maine Health Security Act.

(Def. Byrum's Mot. Dismiss at 2–3.)

Byrum does not cite to, nor attempt to distinguish, *Hewett v. Inland Hospital,* 39 F.Supp.2d 84 (D.Me.1999) or *Ferris v. County of Kennebec,* 44 F.Supp.2d 62 (D.Me.1999). In *Hewett* Judge Brody considered whether the medical malpractice screening panel procedure extended to cases brought under the Emergency Medical Treatment Active Labor Act, 42 U.S.C.A. § 1395 dd ("EMTALA"). Noting that there was no First Circuit case directly addressing the issue, but citing to numerous other federal precedents, Judge Brody concluded that when the federal court in Maine exercises original jurisdiction over EMTALA claims arising under federal law the statute "does not incorporate and directly conflicts with similar state law requirements." *Id.* at 2.

In *Ferris* Judge Brody elected to exercise discretion under 28 U.S.C. § 1367 (1994) and dismiss a medical malpractice supplemental count that had not been through prelitigation screening, while proceeding to resolution of a § 1983 action arising from the same nucleus of operative facts. Count I of the Ferris complaint alleged that the defendant had deprived plaintiff of her constitutional rights under the Eighth Amendment by failing to provide her with medical treatment while she was a pretrial detainee at the Kennebec County Jail. The court denied the motion to dismiss as to that count.

 Faulkingham's complaint invokes this court's jurisdiction pursuant to 42 U.S.C. § 1983, claiming a violation of his

rights under the United States Constitution.[2] In his response to this motion, Faulkingham has unequivocally stated that his complaint does not seek damages for any state cause of action, tort, breach of contract or otherwise: "[T]his alleged argument is one of deliberate indifference to a serious medical need by defendant Byrum, and unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." (Pl.'s Opp'n Mot. Dismiss at 2, Docket No. 74)

I am unaware of any case in this District that has ordered that a civil rights violation must be submitted to a medical malpractice screening panel simply because the alleged violator of constitutional rights happens to be employed in the medical profession. If this court has concluded that an EMTALA claim—which is more closely akin to a medical malpractice action than this claim—does not require prelitigation screening, it strikes me as incongruous to hold that a civil rights complaint does. The motion to dismiss or strike the complaint is **DENIED**.

*So Ordered.*

---

2. Disputes about the best course of treatment and the medically appropriate standard of care are not actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court.").